In re Richard J. SARAPAS, Debtor.

Annette CONVERSE, Executor of the Estate of Edna Guertin, Russell Fancy, Irene Fancy, Lorraine Brodeur, Blanche Wagner, Dorothy Belanger, Lenwood Cummings, and Martha Cummings, Plaintiffs,

v.

Richard J. SARAPAS and Stanley Labovitz, Trustee, Defendants.

Bankruptcy No. 4–83–416.
Adv. No. 87–4062.

United States Bankruptcy Court,
D. Massachusetts.

March 3, 1988.

Stephen Gordon, Worcester, Mass., for plaintiffs.

Richard T. Courtney, Worcester, Mass., for debtor Sarapas.

Stanley LaBovitz, Worcester, Mass., Trustee.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

This is a complaint seeking to have indebtedness represented by default judgments against Richard J. Sarapas (the "Debtor"), declared nondischargeable under any one or more of the foregoing provisions of Title 11: § 523(a)(4) (debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny"); § 523(a)(3)(B) (debt "neither listed nor scheduled ... in time to permit ... if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a

determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case for such timely filing and request"); § 523(a)(6) (debt "for willful and malicious injury by the debtor to another entity or to the property of another entity"); and § 523(a)(2)(A) (debt for "money, property, services ... to the extent obtained by ... false pretenses, a false representation, or actual fraud"). Plaintiffs also contend that their indebtedness remains undischarged by reason of the fact that it did not come into existence until 1987, so that it could not have been discharged in the Debtor's prior bankruptcy. A trial has been held. We set forth here our findings of fact and rulings of law.

The Debtor is a disbarred lawyer who has been convicted and has served his sentence for larceny of client funds. The plaintiffs are former clients who retained him to represent them in securities fraud litigation in the United States District Court for this district. The Debtor signed a contingent fee agreement with the plaintiffs and took retainers from them in amounts that varied from $150 to $3,000 "to be applied first to reasonable expenses and disbursements and then to fees." Under the contingent fee agreement, the Debtor's reasonable compensation upon collection of funds was not to exceed 30% of the first $10,000, 25% of the next $25,000 and 20% of the balance.

The district court case was called for trial on June 14, 1982. The court had properly mailed notice of the trial to the Debtor, but he failed to appear. The plaintiffs were thereafter defaulted. The Debtor was then under indictment and was drinking heavily. He paid no attention to the plaintiffs' case. When the plaintiffs learned of the defaults, they hired another lawyer whose motion to vacate the default judgments was denied on October 7, 1982 after a hearing. The plaintiffs thereafter received 6% disbursements from a receiver appointed for the securities fraud defendant, whereas other litigants who had obtained judgments received 100% of their claims from the receiver.

On June 20, 1983, the Debtor filed a petition in this Court and thereafter obtained an order for relief under Chapter 7. He did not list the plaintiffs in his schedules. They had neither notice nor knowledge of the bankruptcy proceeding. Several years thereafter they filed complaints against the Debtor in state court claiming damages for the breach of his obligations in representing them as his clients. They were unable to locate the Debtor until January 28, 1987, when service was made upon him. By then his bankruptcy case in this Court had been closed as a no-asset case. The Debtor filed an answer *pro se* alleging that the plaintiffs' debts had been discharged in his bankruptcy, attaching a copy of his discharge. This was the first the plaintiffs knew of the bankruptcy. On March 23, 1987, the Debtor was defaulted for failing to appear for trial in state court. Damages were thereafter assessed, and the plaintiffs obtained default judgments against him on July 15, 1987. In the meantime, the Debtor had hired a lawyer who obtained an order from this Court reopening the bankruptcy; he thereafter filed amended schedules listing the debts owed the plaintiffs. This Court notified the plaintiffs that they had until August 28, 1987 to file complaints requesting judgments declaring their debts nondischargeable. The present complaint followed within the prescribed period.

## DISCUSSION

The parties tried the case primarily under 11 U.S.C. §§ 523(a)(2), (4) & (6). The complaint, however, is really only properly before us on a § 523(a)(3) claim. The other claims were time-barred early in the case by the expiration of the period in which creditors could file complaints to determine dischargeability under § 523(a)(2), (4) & (6). 11 U.S.C. § 523(c); Bankr.R. 4007(c). The Court has contributed to the confusion by appearing to extend that time period in its notice to plaintiffs setting down a new date for the filing of complaints objecting to discharge or seeking the nondischargeability of debts. Nor was it recognized at trial that the focus was more appropriately on § 523(a)(3)(B). The parties' concentration

on §§ 523(a)(2), (4) & (6), however, was appropriate in some sense because, in order to prevail under § 523(a)(3)(B), a creditor must, at the least, prove that he had a viable case under one of those subsections at the time of the original filing. *See Urbatek Systems, Inc. v. Lochrie (In re Lochrie)*, 78 B.R. 257 (Bankr. 9th Cir.1987); *In re Zablocki*, 36 B.R. 779 (Bankr.E.D.Va. 1983). Furthermore, because this Court concludes that the plaintiffs did not have a viable case under §§ 523(a)(2), (4), or (6) at the time of the original case, no prejudice resulted to any party through the preoccupation at trial with these subsections.

Section 523(a)(3) excepts from discharge any debt:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owned, in time to permit permit—
>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>> (B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

The essential inquiry under § 523(a)(3)(B) is whether the omitted creditor had a viable § 523(a)(2), (4) or (6) claim (sometimes referred to by courts as a "2,4,6 claim") at the time of the original petition. If the creditor shows the existence of such a claim, the inquiry turns to whether the creditor had notice or actual knowledge of the bankruptcy in time to meet the time limits set by Bankr.R. 4007(c). If the creditor fails to show the existence of a 2,4,6 claim, the question then becomes whether the creditor had notice or actual knowledge of the bankruptcy in time to file a proof of claim. *See* § 523(a)(3)(A).

The plaintiffs have failed to show the existence of any claim under § 523(a)(2), (4) or (6). The Debtor paid little attention to his law practice at the time that the district court case was called for trial. He was drinking heavily and his personal problems were overwhelming him. His inattention to the plaintiffs' case was not the result of any conscious plan or scheme; he was merely preoccupied with his own misfortune, and consequently was negligent in attending to the affairs of his law practice. Although the Debtor was clearly in violation of his ethical obligation as an attorney to handle his representation of clients in a competent and attentive manner, *see* Mass. Sup.Jud.Ct.R. 3:07, Canon 6 & DR 6–101, his conduct here falls far short of the conduct needed to show intent to defraud or willful and malicious behavior. *See, e.g., Massachusetts v. Hale*, 618 F.2d 143, 147 (1st Cir.1980) (a fraudulent intent to deceive is generally required to establish an exception to discharge based on fraud); *Stern v. Dubian (In re Dubian)*, 77 B.R. 332, 336–37 (Bankr.D.Mass.1987) (in order to prove that a debtor acted willfully and maliciously, a creditor must show conduct done intentionally without just cause or excuse which necessarily causes injury). The Debtor here certainly had no specific intent to defraud or to do harm to the plaintiffs, nor even a general intent to do so.

The question then arises concerning the plaintiffs' rights to have their debts declared nondischargeable under § 523(a)(3)(A). Here the inquiry focuses on whether an opportunity still exists for the plaintiffs to file proofs of claim in this case. If not, the plaintiffs would be entitled to have their debts declared nondischargeable because the parties have stipulated that the plaintiffs had neither notice nor actual knowledge of the Debtor's petition until the Debtor filed his answer in the state court action, three and one-half years after his discharge. The plaintiffs, however, will clearly be able to file timely proofs of claim. This case was originally closed as a no-asset case. A notice was sent out to listed creditors pursuant to Bankr.R.

2002(e) informing them that there were no assets, and that no proofs of claim need be filed until assets were discovered. If and when assets are discovered, the plaintiffs and other creditors will be notified and given an opportunity to participate in the estate. In these circumstances, three circuit courts have held that the focus is not on notice or actual knowledge, but on prejudice to the omitted creditor. Unless the creditor can show that the debtor omitted him fraudulently or as part of an intentional design, the debt is dischargeable in a no-asset case. *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir.1986); *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539 (6th Cir.1985); *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322 (7th Cir.1983). We adopt the approach of these circuit courts. This case is distinguishable from *In re Iannacone*, 21 B.R. 153 (Bankr.D.Mass.1982), in that a bar date for filing proofs of claim was established there, whereas in this case no bar date has been set. There is, furthermore, no evidence that the plaintiffs were intentionally omitted from the Debtor's schedules to defraud them or as part of an intentional design.

Nor do the plaintiffs' claims escape discharge on the ground that they arose after the Debtor's bankruptcy filing of June 20, 1983. The plaintiffs had claims against the Debtor for legal malpractice as of that date. They were then aware of the Debtor's negligent conduct and that the resulting default judgment entered against them would likely prejudice their claims against the fund held by the receiver. Although the exact amount of their loss was not known when the Debtor filed his bankruptcy petition, all the operative facts establishing the plaintiffs' cause of action had taken place. The plaintiffs clearly had "claims" within the meaning of 11 U.S.C. § 101(4) which could have been addressed in the Debtor's original bankruptcy case. *See In re Johns–Manville Corp.*, 57 B.R. 680, 687–88 (Bankr.S.D.N.Y.1986).

The debts of the plaintiffs are dischargeable. A separate order shall issue.