In re Thomas L. **HAGA**, Debtor.

Thomas L. **HAGA**, Plaintiff,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
Defendant.

Bankruptcy No. 88–13831–LK.
Adv. No. 90–1326–LK.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

July 24, 1991.

---

James V. Hoeffner, Jaime L. Flores, Alvis, Carssow, Cummins, Hoeffner, Botsford, P.C., Austin, Tex., for defendant, Nat. Union Fire Ins. Co. of Pittsburgh.

Sam H. Hall, Austin, Tex., for debtor/plaintiff Thomas L. Haga.

## MEMORANDUM OPINION ON PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

FRANK R. MONROE, Bankruptcy Judge.

A trial was held on May 20, 1991 on the Complaint filed by the Debtor, Thomas L. Haga, to Determine Dischargeability of Debt of National Union Fire Insurance Company of Pittsburgh, Pa.

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334(b) and (d), 28 U.S.C. § 157(a) and (b)(1) and the standing Order of Reference existing in this District. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### SETTING THE STAGE

On December 29, 1988, Thomas L. Haga filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The case was subsequently closed. Upon discovering that he failed to schedule Defendant's claim in his petition, the Debtor requested the case be reopened to allow amendment of the schedules. The order reopening the case required the Debtor to institute an adversary proceeding to determine the dischargeability of Defendant's claim within sixty (60) days and stated that the reopening of the case was not an adjudication of the effect of the previous Order of Discharge entered in the case on the newly added claim. The Debtor then filed the instant complaint to determine the dischargeability of the debt owed Defendant.

### FINDINGS OF FACT

The parties stipulated to Findings 1 through 7 in their Joint Pretrial Order and the Court found Findings 8 through 11 at the conclusion of the trial.

1. In November, 1984, Plaintiff purchased an interest in TM Whitehall Equipment Trust 84–B, a grantor trust, with $5,092.00 cash and delivery of his promissory note dated November 30, 1984 payable to TM Credit Corporation ("TMCC"). Plaintiff also executed an Indemnification and Pledge Agreement pursuant to which Defendant issued a bond guaranteeing Plaintiff's payment of the TMCC debt.

2. Plaintiff provided his written financial statement dated September 25, 1984 ("Financial Statement") to the broker handling the transaction knowing that a financial statement was necessary for the credit arrangement to occur.

3. The Indemnity Agreement is an agreement between Plaintiff and Defendant and not between Plaintiff and TMCC. The Plaintiff's liability thereunder is contingent on his not paying the TMCC debt.

4. Plaintiff defaulted on the TMCC debt. After acceleration, Defendant paid the TMCC debt pursuant to the terms of the bond.

5. Defendant notified Plaintiff of its payment under the bond and demanded reimbursement of said funds. Ultimately, Defendant obtained a default judgment for all amounts owed.

6. Plaintiff filed this chapter 7 case on December 29, 1988. The case was noticed to creditors as a "no asset" case, and creditors were advised not to file proofs of claim unless later notified.

7. Plaintiff listed TMCC as a creditor; however, Plaintiff failed to list Defendant as a creditor.

8. The claim of Defendant is a direct claim against Plaintiff. It is not a claim held by Defendant through subordination or subrogation of TMCC's right to payment from Plaintiff.

9. Defendant was not scheduled in the original petition.

10. Defendant did not have notice or actual knowledge of Plaintiff's bankruptcy case in time to file a proof of claim, if one had been necessary, or to timely request a determination of the dischargeability of its debt under § 523(a)(2), (4), or (6).

11. The only proof of non-dischargeability offered by Defendant was to point out certain differences between the Financial Statement and the schedules of assets and liabilities filed in the case on January 27, 1989. This neither proves that the Financial Statement was false when provided TMCC nor that Defendant has a debt of the kind specified in § 523(a)(2). Defendant offered no other proof of the elements of nondischargeability under § 523(a)(2).

## ISSUE

When alleging that its claim is excepted from discharge under § 523(a)(3)(B), to what degree must a creditor prove its claim is a kind of debt specified in § 523(a)(2), (4), or (6)?

## DISCUSSION AND CONCLUSIONS OF LAW

Given that the Fifth Circuit has not spoken directly on this issue, the Court must look elsewhere to determine a claimant's burden of proof in § 523(a)(3)(B) actions. Other courts dealing with the issue have required differing degrees of proof depending on their interpretation of the interplay between 11 U.S.C. § 523(a)(3)(B) and 11 U.S.C. § 523(a)(2), (4), or (6).

Section 523(a)(3)(B) of the Bankruptcy Code provides that if a creditor is not properly scheduled and has no actual knowledge of the case in time to timely file a claim *and* to timely file a dischargeability complaint under § 523(a)(2), (4), or (6), then "if such debt is of a kind specified in paragraph (2), (4), or (6) of this paragraph," it is

not discharged. 11 U.S.C. § 523(a)(3)(B) (emphasis added). Although written as conjunctive, this phrase should be read in the disjunctive. *In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987) ("[T]o comport with legislative intent, § 523(a)(3)(B) shall be read as requiring the prevention of filing a proof of claim *or* a complaint to determine dischargeability." (emphasis in original)). As support for this construction, the Court reasoned that if a case is a "no asset" chapter 7, the time for filing claims will not expire unless some non-exempt assets are found. In this situation, the first requirement of § 523(a)(3)(B) cannot be met. Further, unless read in the disjunctive, the requirement in § 523(a)(3)(B) that the creditor also hold a non-dischargeable claim adds nothing to the substance of § 523(a)(3) as a whole and could very well penalize a creditor with a claim of a kind specified in § 523(a)(2), (4), or (6). This is because the time periods to file claims and to file § 523 complaints in a chapter 7 case are different and one could conceivably learn of a case in time to file a claim but too late to file a § 523 complaint. Reading this phrase in the disjunctive solves these potential problems and is in line with legislative intent.

It is stipulated that the Defendant was not scheduled and that it had no actual knowledge of this case in time to timely file a dischargeability complaint. Therefore, the resolution of the issue lies in the interpretation of the phrase "debt is of a kind specified...." The interpretation of Congress' intent has widely varied and is not without substantial question.

Courts have imposed results using the entire scope of positions available concerning the extent to which the underlying § 523(a)(2), (4), or (6) claim must be proven when bringing a complaint under § 523(a)(3)(B). Results range from requiring only proof that the creditor was not scheduled to requiring a full trial on the merits of the underlying dischargeability claim.

Cases holding that a debtor's failure to timely schedule a creditor, which prevents the creditor from receiving notice or having

actual knowledge of the case, automatically excepts from discharge the omitted creditor's debt include *Matter of Peloso*, 107 B.R. 31, 33 (Bankr.S.D.N.Y.1989) ("[T]he grounds for non-dischargeability should be bottomed on 11 U.S.C. § 523(a)(3)(B) and not § 523(a)(2), (4), or (6)."); *In re Dabbs*, 72 B.R. 73, 74 (Bankr.N.D.Ala.1987) (If no notice, the creditor's debt is non-dischargeable.); *National Union Fire Insurance Company of Pittsburgh, Pa. v. Vitale (In re Vitale)*, Ch. 7 Case No. 89–01345–H5–7, Adv. No. 90–0389–H3, slip op. at 6 (S.D.Tex. April 24, 1991) (Judge Letitia Clark) (Notice to the creditor was insufficient to meet the standards of § 523(a)(3) making the debt non-dischargeable.); *In re Strong*, 64 B.R. 54, 55–56 (Bankr.E.D.Tenn. 1986) (Under § 523(a)(3)(B), "the question is whether the plaintiffs had notice or actual knowledge of the bankruptcy case in time to file a complaint to determine dischargeability."). These courts focused only on whether the creditor had notice or actual knowledge of the case in time to take the actions required under § 523(a)(3)(B).[1]

On the other end of the spectrum, courts have required that the creditor prove the *merits* of the claim under § 523(a)(2), (4), or (6) as well as lack of notice or actual knowledge. *See In re Padilla*, 84 B.R. at 196–97 (The case was reopened to allow the creditor to prove that his debt was not listed in time to file a dischargeability action and "prove that the debt falls under § 523(a)(2), (4), or (6)."); *In re Lochrie*, 78 B.R. 257, 259–60 (9th Cir.BAP 1987) ("Absent prejudice to the creditor by reason of omission from the schedules, the creditor must prove its cause of action under § 523(a)(2), (4), or (6), in order to prevail under § 523(a)(3)."); *In re David*, 106 B.R. 126, 129 (Bankr.E.D.Mich.1989) ("[T]o find out if § 523(a)(3)(B) applies, one still has to determine whether the debt was one that *would have been* non-dischargeable under § 523(a)(2), (4), or (6)." (emphasis in original)); *In re Bosse*, 122 B.R. 410, 413–14

(Bankr.C.D.Cal.1990) (Citing *Lochrie* with approval, the court found the debt dischargeable under § 523(a)(3)(B) because the creditor failed to plead or prove at trial a claim under § 523(a)(2), (4), or (6).); *In re Candelaria*, 121 B.R. 140, 144–45 (E.D.N.Y.1990) ("Unless a creditor can show that his debt actually comes within the exceptions provided for in paragraphs (2), (4) and (6), there is no reason to deny a debtor the benefit of a full discharge in a no asset case simply because he inadvertently omitted a debt.... [W]hen paragraph (2), (4) or (6) issues 'are presented in a § 523(a)(3)(B) context, they are not subject to the restrictions of § 523(c) or, therefore, Rule 4007.' " (citing *In re Lochrie*)); *In re Anderson*, 72 B.R. 495, 497 n. 5 (Bankr.D.Minn.1987) (Despite § 523(c) and Rule 4007(c), "§ 523(a)(3)(B) preserves to such creditors [holding unlisted debts of a kind specified in § 523(a)(2), (4), or (6)] the right to litigate the dischargeability of their debts."); *In re Anderson*, 72 B.R. 783, 789 (Bankr.D.Minn.1987) (The creditor's "[u]nsubstantiated allegations of fraud are insufficient to defeat [debtor's] motion for summary judgment with respect to § 523(a)(3)(B).").

Without commenting on the issue, other courts have simply tried the underlying claim in § 523(a)(3) actions. *See In re Pyles*, 38 B.R. 92, 94 (Bankr.W.D.Mo.1984) ("[T]he court has granted a full and fair opportunity for a determination of dischargeability by means of this very adversary action."); *Matter of Baitcher*, 36 B.R. 588, 591 (Bankr.N.D.Ga.1983) ("[Plaintiff] now has the opportunity to fully litigate the issue of dischargeability."), *vacated and remanded on other grounds*, 781 F.2d 1529 (11th Cir.1986).

Courts travelling the middle road have required the creditor *prove* a lack of notice/actual knowledge of the case but only *show* that it holds a § 523(a)(2), (4), or (6) claim. *See Matter of Zablocki*, 36 B.R. 779, 782 (Bankr.D.Conn.1984) ("The mere

---

1. The Court notes that its prior opinion entered in *In re Dye*, 108 B.R. 135 (Bankr.W.D.Tex.1989) should not be construed to hold that no proof of the § 523(a)(2), (4), or (6) underlying claim is necessary when determining dischargeability under § 523(a)(3)(B). The issue regarding the degree of proof necessary presented in the case at bar was not at issue in that case.

passage of the date beyond which a § 523(c) determination of dischargeability may be sought does not, alone, trigger the § 523(a)(3)(B) exception to discharge.... Instead, to establish the § 523(a)(3)(B) exception, a creditor must show that he actually had grounds under § 523(a)(2), (4) or (6) and that the debtor's failure to schedule him deprived him of the opportunity to assert these grounds at the proper time."); *In re Sarapas*, 83 B.R. 195, 197 (Bankr. D.Mass.1988) ("The essential inquiry under § 523(a)(3)(B) is whether the omitted creditor had a viable § 523(a)(2), (4) or (6) claim ... at the time of the original petition. If the creditor shows the existence of such a claim, the inquiry turns to whether the creditor had notice or actual knowledge of the bankruptcy in time to meet the time limits set by Bankr.R. 4007(c).").

A review of the legislative history of § 523(a)(3)(B) gives no helpful insight as to Congress' intentions, and, therefore, which line of cases should be followed. According to the Legislative Statements, § 523(a)(3) was enacted to overrule *Birkett v. Columbia Bank*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904), which held that a creditor had insufficient notice of the case, although it learned of the case in time to prove its claim and act to revoke the discharge, because the creditor did not have such knowledge in time to allow him an equal opportunity with other creditors to participate in the case. *See 3 Collier on Bankruptcy* para. 523.13, at 523–90 (L. King 15th ed. 1991) (citing 124 Cong.Rec. H11,095–96 (daily ed. Sept. 28, 1978); S17,-412–13 (daily ed. Oct. 6, 1978). The Committee Notes from the Senate and House Reports for § 523(a)(3) are nearly identical and state:

> "Unscheduled debts are excepted from discharge under paragraph (3). The provision, derived from section 17(a)(3) [former section 35(a)(3) of this title], follows current law, but clarifies some uncertainties generated by the case law construing 17(a)(3) [former section 35(a)(3) of this title]. The debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to

protect his rights, unless the creditor had notice or actual knowledge of the case." S.Rep. No. 95–989, 95th Cong., 2d Sess. 77–79 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

A review of the law which developed under § 17a(3), the predecessor section to § 523(a)(3), is not particularly helpful either, as it contained no requirement that the omitted creditor also have grounds to object to the non-dischargeability of its debt. The former section excepted debts from discharge which "have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." *See* 11 U.S.C. § 35 (§ 17a(3)); *In re Laczko*, 37 B.R. 676, 678 (9th Cir.B.A.P.1984), *aff'd without opinion*, 772 F.2d 912 (1985) (citing Bankruptcy Act § 17a(3)). To determine if the omitted debt was excepted from discharge under § 17a(3), the courts generally reviewed the sufficiency of notice to the creditor.

■ Various policy considerations which are threaded throughout the code do help guide construction of § 523(a)(3). To promote accuracy and thoroughness in petitions, debtors bear the burden to correctly list creditors' claims and amend their schedules when necessary. *See* § 521, Bankruptcy Rules 1007, 1009, 1019; *see also, U.S., Small Business Administration v. Bridges*, 894 F.2d 108, 111 (5th Cir.1990) ("[A] debtor must not take lightly her obligation to schedule all her creditors."). And, as one court stated

> "The 'fundamental purpose' of notice to creditors is to give them an equal opportunity to avail themselves of the protection of the bankruptcy laws.... The reason for allocating this responsibility [to properly schedule debts] and its attendant penalties to the debtor is that it works to assure that the court will identify all creditors and thereby convey to them proper notice of the matter.... [T]imely listing of creditors is all that is required of the debtor."

**326**

*Matter of Heyward*, 15 B.R. 629, 632 (Bankr.E.D.N.Y.1981) (citations omitted).

The omission of a creditor, whether inadvertent or intentional, robs the creditor of the ability to participate in the various stages of the case. Failure to receive notice may harm creditors by denying their participation in the meeting of creditors and their ability to object to the debtor's claims of exempt property. It may also prevent their timely filing of a complaint objecting to discharge, a proof of claim to share in any distribution, or a complaint to determine dischargeability of a debt. *In re Anderson*, 72 B.R. at 786. However, given the plain language of § 523(a)(3), Congress apparently only considered the latter two possible harms to an omitted creditor as being material because only the inability to timely file a proof of claim and a dischargeability action are sufficient grounds under the Code to penalize the debtor. *Id.* No remedy is provided for denial of participation in other aspects of the case. *Id.* These considerations speak for penalizing the debtor and not the omitted creditor; therefore, they favor a construction that such a creditor should not have to prove the merits of its non-dischargeability claim under § 523(a)(2), (4), or (6), but only the existence of such; a colorable or viable claim if you will.

▮ Some courts view the deadline imposed by 4007(c) as jurisdictional. *See In re Kirsch*, 65 B.R. 297, 301–302 (Bankr. N.D.Ill.1986). However, it is also a statute of limitations as once the period contained therein has passed, no court (not just a bankruptcy court) can entertain a cause of action barred thereby. *See Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir.1987). Further, the limitations period of Rule 4007(c) is not subject to extension after its expiration due to a party's excusable neglect. *Id.* at 346; *see* Rule 9006(b)(3). Therefore, to require the underlying claim to be tried on its merits, one must interpret § 523(a)(3)(B) as creating an exception to (or an extension of) the limitations period of Rule 4007(c). If Congress had intended that result, surely it would have simply said so.

▮ Further, the allocation of jurisdiction between the bankruptcy court and other forums to adjudicate actions brought under § 523 is helpful to the analysis. Under 28 U.S.C. § 1334(b), the district court has original but not exclusive jurisdiction of all civil proceedings arising under title 11. Under 28 U.S.C. § 157(b)(1), the bankruptcy court may hear and determine all core proceedings arising under title 11. Dischargeability actions under § 523(a)(2), (4), or (6) are core proceedings under 28 U.S.C. § 157(b)(2)(I). Section 523(c) requires that the bankruptcy court determine actions brought under subsections (a)(2), (4), or (6), *In re David*, 106 B.R. at 130; and Rule 4007(c), which implements § 523(c), mandates that such actions be filed within sixty days following the first date set for the meeting of creditors. *Matter of Sam*, 894 F.2d 778, 780 (5th Cir. 1990). The combined effect of § 523(c) and Rule 4007(c) is to grant the bankruptcy court exclusive jurisdiction to determine dischargeability of § 523(a)(2), (4), or (6) debts so long as they are timely filed. *See* Advisory Committee Note to Rule 4007(c). However, jurisdiction is not exclusive for actions brought under § 523(a)(3) because the bankruptcy court shares concurrent jurisdiction with other forums to try such claims. *In re Iannacone*, 21 B.R. 153, 155 (Bankr.D.Mass.1982); *see also, In re Bowen*, 102 B.R. 752, 754 (9th Cir.B.A.P.1989) ("[T]he bankruptcy court has concurrent, but not exclusive, jurisdiction for § 523(a)(3) actions."); *In re Dabbs*, 72 B.R. at 74 & n. 7 (Concurrent jurisdiction is based on 28 U.S.C. § 1334(b).). Further, there is no time limitation for bringing actions under § 523(a)(3). *See* Rule 4007(b). Thus, actions under § 523(a)(3) can be urged either in bankruptcy or state court. *See In re David*, 106 B.R. at 130; *In re Iannacone*, 21 B.R. at 155; *In re Bowen*, 102 B.R. at 754.

▮ Therefore, this jurisdictional allocation gives the state court the same power it gives the bankruptcy court to determine if a creditor has a "debt of a kind specified in paragraph (2), (4), or (6)." However, it should not be read as giving the state court

jurisdiction to try the merits of such actions. Why? Because § 523(c) and Rule 4007(c) require these matters be brought within a specific time period in the bankruptcy court. This effectively restricts the otherwise "concurrent" jurisdictional grant contained in 28 U.S.C. § 1334(b) for these matters to the bankruptcy court and eliminates the ability of the state court to try the merits of such actions. As such, this adds weight to the proper interpretation of the words "debt of a kind specified" being that trial of the underlying § 523(a)(2), (4), or (6) claim on its merits is not appropriate when determining a § 523(a)(3)(B) action; only a showing that a colorable or viable claim thereunder exists is all that should be required.

■ This Court concludes that the phrase "of a kind" contained in § 523(a)(3)(B) should be interpreted as requiring a creditor only to show that it has a viable or colorable claim that its debt is non-dischargeable under subsections (a)(2), (4), or (6) of § 523 and not to prove its claim on the merits. Under the latter interpretation, § 523(a)(3)(B) would create an exception to or extension of the limitations period contained in Rule 4007(c) when there is no indication anywhere that Congress had that intent.

## BURDENS OF PROOF

■ The debtor's discharge is an affirmative defense which establishes a prima facie defense to any claim brought against him based on a debt existing at the time of the bankruptcy filing. *See* 3 *Collier on Bankruptcy* para. 523.13, at 523–98; *In re Anderson*, 72 B.R. at 496. Therefore, the creditor has the burden of proving that its debt is excepted from discharge under § 523(a)(3)(B). 3 *Collier on Bankruptcy* at 523–98. But, the debtor has the burden to show that the creditor comes within the "unless" exception to § 523(a)(3)(B), i.e., that the creditor had notice or actual knowledge of the case in time to file a proof of claim and request for a determination of dischargeability. *Id.* at 523–99; *see* 11 U.S.C. § 523(a)(3)(B); *In re Sung Il Kim*, 102 B.R. 787, 790 (Bankr.

D.Haw.1989). If the debtor fails in that burden and the creditor's lack of notice or actual knowledge is established, then the creditor must show that it has a viable or colorable claim that its "debt is of a kind specified in paragraph (2), (4), or (6)" of § 523(a). 11 U.S.C. § 523(a)(3)(B). The debtor then has the burden to rebut that showing.

■ In this case, Plaintiff failed to schedule Defendant's claim, and Defendant had no notice or actual knowledge of the case in time for Defendant to file a timely complaint to determine dischargeability. The burden of proof is therefore on the Defendant to prove that it has a colorable/viable claim of non-dischargeability under § 523(a)(2), (4), or (6). The proof the Defendant offered at the trial does not meet that burden. Defendant's comparison of the differences of the Financial Statement dated four years prior to bankruptcy with the bankruptcy schedules, without more, proves nothing. Defendant did present minimal evidence of its reliance on Debtor's financial statement but presented no evidence of Debtor's fraudulent intent nor of the falsity of said Financial Statement at the time it was issued. Thus, Defendant failed to sustain its burden of proof.

## CONCLUSION

The Plaintiff is entitled to judgment on its Complaint to Determine Dischargeability of Debt, and the indebtedness alleged owed by Defendant related to the TMCC transaction is determined discharged by the Order of Discharge filed in this case on the 23rd day of May, 1989. A separate order of even date herewith will be entered by the Court.