In re William JONES and Annette Jones, Debtors.

William Jones and Annette Jones, Plaintiffs,

v.

Warren Construction, Defendant.

Bankruptcy No. 302–09099.
Adversary No. 303–0216A.

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 7, 2003.

Ben H. Thomas, Nashville, TN, for Debtor/Plaintiff.

Paul E. Jennings, Murfreesboro, TN, for Defendant.

### MEMORANDUM & ORDER

KEITH M. LUNDIN, Bankruptcy Judge.

The issue began as whether the defendant violated the discharge injunction in 11 U.S.C. § 524 when it garnished the debtor's wages to collect a prepetition debt. Because the defendant was not a scheduled creditor and did not have notice or knowledge of bankruptcy, the issue became whether the defendant's debt was discharged pursuant to 11 U.S.C. § 523(a)(3)(B). In a third twist, the defendant contends on summary judgment that its "colorable" claim of prepetition misconduct by the debtors satisfies the cross-reference to § 523(a)(2), (4) or (6) in

§ 523(a)(3)(B). A material dispute with respect to the debtors' prepetition (mis)conduct precludes the defendant's motion for summary judgment. The following are findings of fact and conclusions of law. FED. R. BANKR.P. 7052.

## I.

The debtors filed Chapter 7 on August 5, 2002. The trustee filed a no asset report and the debtors were discharged on November 25, 2002. Although the debtors referenced Warren Construction, the defendant here, in their Statement of Affairs, they omitted Warren Construction from the schedules and list of creditors.

Warren Construction filed a state court complaint in February, 2002, alleging that the debtors failed to pay for construction work after a fire at their home. Just before the state court trial, Warren Construction learned that the debtors received insurance proceeds for the construction, but those funds were not paid to the defendant. When the debtors did not appear at trial, Warren Construction took a default judgment for $12,539.66.

No payment was made on the judgment, and Warren Construction filed a garnishment against the debtor, William Jones, on March 28, 2003. On April 8, 2003, Warren Construction learned of the bankruptcy for the first time. On April 18, 2003, the debtors filed this adversary proceeding seeking damages for violation of the discharge injunction.

Warren Construction contends that the debtors committed fraud or conversion by intercepting insurance proceeds that were intended for the defendant. Warren Construction argues that it was without timely notice of the debtors' bankruptcy for § 523(a)(3)(B) purposes and that it has alleged at least a "colorable" claim under § 523(a)(2) or (6). Accordingly, it seeks summary judgment that its debt was not discharged and that it did not violate the discharge injunction.

The debtors respond with an affidavit that they did not negotiate any insurance check that was payable to Warren Construction. The affidavit states that Warren Construction was not paid because its work was sub-standard, and that others were paid to complete or correct the defendant's work. The debtors allege that no fraud or conversion occurred. The debtors argue that summary judgment is not appropriate because there is a material dispute with respect to the defendant's proof under § 523(a)(3)(B) that it is owed a debt of a kind specified in § 523(a)(2), (4) or (6).

## II.

Section 523(a)(3)(B) excepts from discharge a debt that is:

(3) neither listed nor scheduled under section 521(a) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(B) if such debt is of a kind specified in paragraphs (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filling and request.

11 U.S.C. § 523(a)(3)(B). This section does *not* create an automatic exception to discharge when a Chapter 7 debtor fails to schedule or list a creditor. Rather, the unscheduled creditor must be without timely notice or knowledge of the bankruptcy case *and* the creditor must have a claim "of a kind specified" in § 523(a)(2), (4) or (6).

A plain reading of § 523(a)(3)(B) makes the existence of a claim that would be nondischargeable under § 523(a)(2), (4) or (6) an element of the unscheduled creditor's burden of proof for nondischargeability. At a simplistic level, "of a kind" in § 523(a)(3)(B) means "of the same kind; alike." WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 776 (2d ed.1972). "Kind" is defined as "essential character ... sort; variety; class." *Id.* The class to which this phrase refers is "specified" in § 523(a)(2), (4) and (6) of the Bankruptcy Code. The so-called "fraud exceptions" to discharge in § 523(a)(2), (4) and (6) are carefully circumscribed with well defined elements and statutory conditions. The unscheduled creditor's debt must fall within the class of "fraud exceptions" defined in § 523(a)(2), (4) or (6), else the unscheduled debt is dischargeable in bankruptcy.

Well respected canons of statutory construction support this uncluttered reading of § 523(a)(3)(B). Congress used the phrase "of a kind" in at least 35 other places in the Bankruptcy Code.[1] Viewed in the context of its broader statutory usage, "of a kind" captures the elements or char-

acteristics specified in another section of the Bankruptcy Code and makes the incorporated provision a condition for satisfaction of the section making the reference. For example, 11 U.S.C. § 726(b) provides for payment on claims "of a kind specified" in paragraphs (1) through (8) of 11 U.S.C. § 507(a). In *Stuart v. Carter (In re Larsen),* 59 F.3d 783, 787 (8th Cir.1995), the Eighth Circuit reached the reasonable conclusion that the phrase "of the kind specified in section 507(a)(1)" in § 726(b) limits the first priority of distribution to claims that first "qualify as administrative expense claims" under the referenced subparagraphs of § 507(a). This straight forward interpretation of "of the kind" makes sense elsewhere in the Bankruptcy Code.[2]

There is no argument from prior bankruptcy law or legislative history suggesting the unreasonableness of this reading of § 523(a)(3)(B). The phrase "of a kind specified" in § 523(a)(3)(B) does not derive from the prior Bankruptcy Act. Section 17(a)(3) of the former law prevented discharge of all debts that were not "duly scheduled" and contained no additional requirement that the creditor hold an otherwise nondischargeable debt. To deter-

---

1. *See e.g.,* 11 U.S.C. §§ 101(10)(B); 101(12); 101(16); 346(g)(2); 365(b)(4); 501(d); 503(b)(1)(B); 507(a)(8)(A)(ii); 522(c)(1); 522(c)(3); 523(a)(3)(B); 546(c)(2)(A); 553(b)(1); 702(a)(1); 702(c)(1); 705(a); 723(c); 724(a); 724(b); 726(a)(2); 726(a)(6); 761; 766; 943; 1110(a)(2)(B); 1123(a)(1); 1123(a)(1); 1124(2); 1125(a)(1); 1129(a)(9); 1129(9)(C); 1141(d)(1)(A); 1145; 1168; 1228(a)(2); and 1328(a)(2).

2. For example, § 101(12)(A) defines a "debt for child support" as a "debt of a kind specified in section 523(a)(5)...." Again, the cross-reference requires that a debt for child support meets the exact requirements of § 523(a)(5). *See e.g., In re Hutchison,* 270 B.R. 429 (Bankr.E.D.Mich.2001) (citing definition using "of a kind" and then discussing the prerequisites to qualify for support pursuant to § 523(a)(5)). Section 553(b)(1) excepts

setoffs "of a kind specified in sections 362(b)(6), 362(b)(7), 362(b)(14), 365(h), or 365(i)(2)." To qualify for the exception, a setoff must satisfy the precise descriptions in the referenced sections—including transactions by commodity brokers, repo participants, etc. Section 724 permits the trustee to avoid the lien that secures "a claim of a kind specified in section 726(a)(4)" requiring the claim to actually fit within § 726(a)(4). Section 1328(a)(2) discharges all debts provided for by the plan except any debt "of a kind specified in paragraphs (5), (8), or (9) of section 523(a) of this title[.]" Congress didn't except from discharge in Chapter 13 cases all "colorable" or "viable" § 523(a)(5), (8) or (9) claims; rather, only claims that would actually be nondischargeable under § 523(a)(5), (8) and (9).

mine dischargeability under former § 17(a)(3), courts generally reviewed only the sufficiency of notice to the creditor. *See Haga v. National Union Fire Ins. Co. of Pittsburgh (In re Haga)*, 131 B.R. 320, 325 (Bankr.W.D.Tex.1991). As the court noted in *Haga*, the legislative history to § 523(a)(3)(B) is not helpful to determine legislative intent behind the addition of the requirement that the unscheduled creditor hold a § 523(a)(2), (4) or (6) claim. The Senate and House Reports are virtually identical:

> Unscheduled debts are excepted from discharge under paragraph (3). The provision, derived from section 17(a)(3) [former section 35(a)(3) of this title], follows current law, but clarifies some uncertainties generated by the case law construing 17(a)(3) [former section 35(a)(3) of this title]. The debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case.

S.Rep. No. 95–989, at 77–9 (1978); H.R.Rep. No. 95–595, at 363 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–65, 5963, 6318; *see also Haga*, 131 B.R. at 325.

Although the reported decisions are fractured, a substantial number of courts have concluded that the creditor must prove the merits of its cause of action under § 523(a)(2), (4) or (6) to establish the elements of nondischargeability under § 523(a)(3)(B). As explained in *Waugh v. Eldridge (In re Waugh)*, 172 B.R. 31 (Bankr.E.D.Ark.1994):

> This Court believes that the better view is to require the creditor to also demonstrate the merits of the paragraph (2), (4), (6) nondischargeability action. This view is in keeping with the express terms of the statute and the policies embodied in the Bankruptcy Code. In any dischargeability proceeding, there is a strong presumption in favor of discharge and a fresh start for the honest debtor.... [E]xceptions to discharge or dischargeability will be strictly construed in favor of discharge.... [S]ection 523(a)(3)(B) does not create a separate exception for discharge merely for failure to schedule a particular creditor. Rather, the purpose of section 523(a)(3)(B) is to allow determination of dischargeability which would otherwise be barred by the time limitations of section 523(c) and Rule 4007(c), Federal Rules of Bankruptcy Procedure.... [S]ection 523(a)(3)(B) works to preserve the right to litigate the dischargeability of a debt when the creditor did not receive notice, but, at the same time, precludes that creditor from receiving a 'windfall' of nondischargeability due to a clerical error.

*Waugh*, 172 B.R. at 34. *Accord Urbatek Sys. v. Lochrie (In re Lochrie)*, 78 B.R. 257 (9th Cir. BAP 1987); *In re Thompson*, 152 B.R. 24 (E.D.N.Y.1993); *In re Candelaria*, 121 B.R. 140 (E.D.N.Y.1990); *In re Crull*, 101 B.R. 60 (Bankr.W.D.Ark.1989); *In re Padilla*, 84 B.R. 194 (Bankr.D.Colo. 1987).

The reported decisions reaching other conclusions—perhaps a majority of the courts that have addressed the question—are not persuasive. It has been said that there are three schools of thought with respect to the creditor's burden of proof under § 523(a)(3)(B):

> Cases holding that a debtor's failure to timely schedule a creditor, which prevents the creditor from receiving notice or having actual knowledge of the case, automatically excepts from discharge the omitted creditor's debt include *Matter of Peloso*, 107 B.R. 31, 33 (Bankr.

S.D.N.Y.1989), *In re Dabbs,* 72 B.R. 73, 74 (Bankr.N.D.Ala.1987).

On the other end of the spectrum, courts have required that the creditor prove the *merits* of the claim under § 523(a)(2), (4), or (6) as well as lack of notice or actual knowledge.

Courts travelling the middle road have required the creditor *prove* a lack of notice/actual knowledge of the case but only *show* that it holds a § 523(a)(2), (4), or (6) claim.

This Court concludes that the phrase 'of a kind' contained in § 523(a)(3)(B) should be interpreted as requiring a creditor only to show that it has a viable or colorable claim that its debt is nondischargeable under subsections (a)(2), (4), or (6) of § 523 and not to prove its claim on the merits.

*Haga,* 131 B.R. at 323–27 (citations omitted). *Accord Keenom v. All Am. Mktg. (In re Keenom),* 231 B.R. 116 (Bankr. M.D.Ga.1999); *In re Johnson,* 208 B.R. 746 (Bankr.S.D.Ga.1996); *Converse v. Sarapas (In re Sarapas),* 83 B.R. 195 (Bankr. D.Mass.1988); *In re Zablocki,* 36 B.R. 779 (Bankr.D.Conn.1984).

Cases allowing a "colorable" or "viable" § 523(a)(2), (4) or (6) claim to suffice for § 523(a)(3)(B) purposes support this judge-made rule with policy arguments such as promoting accuracy and thoroughness by debtors and bolstering the allocation of jurisdiction over dischargeability actions between the bankruptcy courts and the state courts. *See, e.g., Haga,* 131 B.R. at 326–27. Reading § 523(a)(3)(B) to include a requirement that the creditor prove the merits of the incorporated § 523(a)(2), (4) or (6) action simply states the obvious policy choice already made by Congress with respect to debtors who fail to list creditors: the short time periods and exclusive jurisdiction that a *scheduled* defrauded creditor faces under § 523(c) and Bankruptcy Rule 4007(c) are forfeited when the debtor fails to schedule a claim that would be nondischargeable under § 523(a)(2), (4) or (6). The debtor must live with the uncertainty of an unlimited statute of limitations with respect to omitted fraud claims. The possibility that unscheduled creditors with fraud claims have a choice of jurisdictions in which to litigate nondischargeability hardly explains why the federal courts should excuse fraud creditors from proving nondischargeability when § 523(a)(3)(B) is at issue. The relaxed judge-made standard reads into § 523(a)(3)(B) congressional intent to bar the discharge of an inadvertently omitted debt—an outcome difficult to square with the robust policy of fresh start for the honest but unfortunate debtor.

■ Because Warren Construction bears the burden of proof under § 523(a)(3)(B), this adversary proceeding is not appropriate for summary judgment.[3]

---

**3.** Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Rule 56 provides:

> The summary judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c) (2002). Rule 56(c) sets forth a two-pronged test: (1) whether there is a genuine issue of material fact for trial; and (2) whether the law entitles the moving party to a judgment in the absence of a genuine dispute of a material fact.

The moving party always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings and/or discovery materials which demonstrate that there is no genuine disputed issue of material fact. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party meets that initial bur-

Material facts are in dispute with respect to nondischargeability under § 523(a)(2) and (6). It cannot be determined on the pleadings and conflicting affidavits that the defendant is entitled to judgment under § 523(a)(3)(B) as a matter of law. Accordingly, it cannot be said at this juncture that the discharge injunction in 11 U.S.C. § 524 has not been violated. The defendant's motion for summary judgment is denied. A pretrial conference will be scheduled by separate order.

IT IS SO ORDERED.

den, the burden is shifted to the nonmoving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions designate specific facts showing that a genuine issue of fact remains for trial. *Id.* at 324, 106 S.Ct. 2548.

The Sixth Circuit has interpreted *Celotex* to mean that "the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). A party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. *Street*, 886 F.2d at 1478. If after a sufficient period of discovery, the opposing party is unable to "put up" credible evidence, by way of affidavit or otherwise that a genuine issue of fact exists on a critical issue, then summary judgment is appropriate. *Id.*