[Civil No. 2710.  Filed January 16, 1928.]

[262 Pac. 1002.]

ARTHUR LUHRS, Appellant, v. THE CITY OF PHOENIX, a Municipal Corporation, FRANK A. JEFFERSON, CHARLES E. MORTON, A. L. BOEHMER, BEN CARTER and CLIFF MADDOX as City Commissioners of Said City of Phoenix, and OLIVER LOCH, as City Treasurer, and GEORGE KIRKLAND, as City Clerk of the City of Phoenix, Appellees.

Mr. Robert McMurchie, for Appellant.

Mr. W. L. Barnum, for Appellees.

McALISTER, J.—In this action Arthur Luhrs, a taxpayer of Phoenix, Arizona, seeks to enjoin that city and certain of its officers from executing, issuing, selling and delivering any of the "street railway reconstruction and improvement bonds" that a majority of its voters authorized at an election held on April 30th, 1927.

The gravamen of the complaint is that Ordinance No. 928 of that city, under which the question whether the city should issue its bonds for the purpose of raising funds to reconstruct and rehabilitate its municipally owned and operated street-car system was submitted to the voters is void, because it contains two contradictory provisions relating to the amount of bonds it was proposed to issue, leaving the matter so

doubtful that no one can know just how many were intended, and also fails to state the exact rate of interest the bonds shall bear. The following language, which, it is claimed, is responsible for this uncertainty, appears in both the ordinance and the proposition submitted to the voters:

"Shall the commission of the city of Phoenix, Maricopa county, Arizona, be authorized to create an indebtedness for and on behalf of said city of Phoenix, upon the credit thereof, in excess of four per centum (4%) per annum of, etc., . . . by issuing negotiable serial coupon bonds of the city of Phoenix in the amount of seven hundred fifty thousand ($750,-000.00) dollars for the purpose of acquiring funds for, etc., . . . said bonds to consist of seven hundred fifty (750) in denominations of one thousand ($1,000.00) dollars each, which bonds shall bear the date of their issuance, shall be payable to bearer and bear interest as evidenced by coupons attached thereto at the rate of not to exceed five per centum (5%) per annum, interest payable semiannually on the first days of January and July, and beginning January, 1932; said bonds shall mature and become due and payable serially thirty thousand ($30,000.00) dollars on the 1st day of January, of each of the years 1932 to 1957, inclusive."

It appears further from the complaint that, notwithstanding these alleged defects, the City of Phoenix thereafter by ordinance directed that the bonds be issued and sold to the highest and best bidders, and invited bids therefor; that on June 8th, 1927, it accepted the bid of certain parties, and on the following day its commission enacted Ordinance No. 973, in which it approved the sale thereof and set forth the form of the bonds, the particular description of their numbers, the denomination and maturity of each, and directed that upon their preparation and execution they be delivered to the purchasers; that such bonds are drawn in conformity with this ordinance, but that its provisions are in conflict with

those of Ordinance 928 under which the bonds were authorized by the voters; that the said bonds therefore do not conform to and are not the bonds authorized by the voters, and the City of Phoenix has no right, power, or authority to issue and sell them, though the officers who are defendants herein will execute, issue, and deliver them to the purchasers unless enjoined and restrained from so doing.

To this complaint the defendants interposed a general demurrer, and, it being overruled, they filed a plea in bar and answer, to which the plaintiff demurred. This demurrer was overruled, and in support of their plea in bar the defendants introduced the abstract of record in the case of *Buntman et al.* v. *City of Phoenix et al.*, 32 Ariz. 18, 255 Pac. 490. Thereupon the court sustained the plea in bar and dismissed the action declaring that the bonds when issued and sold would constitute a valid, legal and binding obligation against the City of Phoenix, and it is from this judgment that the plaintiff appeals.

The only errors assigned arise out of the order overruling appellant's demurrer to the plea in bar and of the later one sustaining the plea itself. The basis of the assignments is that the matters alleged in the complaint were not raised or considered in the case of *Buntman et al.* v. *City of Phoenix et al.*, nor are they such that they could have been considered if raised, and, this being true, the appellant is not concluded by the judgment in that case.

In answering this proposition, appellees contend, first, that it was determined in the cause of *Buntman et al.* v. *City of Phoenix et al.*, *supra*, is therefore *res adjudicata* and necessarily not subject to attack in this case. Appellant, however, takes the position that the purpose of that action was to enjoin the holding of an election upon the question of issuing the bonds upon the ground that the proposed issue of $750,000 would exceed the limit to which the City of Phoenix

could become indebted, whereas this action was brought to enjoin the issuance of the bonds authorized at the election upon the ground that both Ordinance No. 928 under which they were voted and the proposition submitting them to the voters do not comply with the statute. The subject matter of the two actions, it is claimed, is different; the questions raised and issues made in this case being in no sense involved in that one.

The plaintiffs in the two cases, it is true, are different persons, but appellant admits that, in contemplation of law, they are the same, since both sued in their capacity as taxpaying electors. And the abstract of record in the Buntman case discloses that Ordinance No. 928 upon which an attempt was made to enjoin the city and its officers from holding the election and the notice of election which it was alleged the city purposed to publish and which included in exact language the proposition later submitted to the voters were set forth in the complaint. It was also alleged that, unless enjoined, the City of Phoenix would publish and post the notice calling the election proposed by Ordinance 928, and the prayer was that the city and its agents be perpetually restrained from doing so.

It is true that, in passing on the question whether the bonds it was proposed by Ordinance No. 928 to issue would exceed the debt limit of the City of Phoenix the court did not consider whether this ordinance and the proposition submitted to the voters called for the issuance of bonds in the sum of $750,000 or $780,000, or for a definite rate of interest. However, it is clear that both matters appeared upon the face of the complaint and would have been decided by the court if it had been claimed that either or both of them rendered this ordinance and the proceedings had in pursuance of it void. The mere fact that the complaint in that case was based upon the

theory that the issuance and sale of the bonds in question would result in the city's exceeding the four per cent debt limit and did not specifically allege that these two defects in the ordinance and the proposition to be submitted to the voters invalidated both does not mean that they were not within the issues of that case. Nothing is clearer than that if assignments had been based upon them the court would have determined their effect at that time; hence they are presumed to have been adjudicated and cannot now be made the basis of another action. *Shinkle* v. *Vickery et al.* (C. C.), 117 Fed. 916; *Jordan* v. *Sisson et al.*, 82 Ind. App. 128, 141 N. E. 88; *Naugle et ux.* v. *Naugle et ux.*, 89 Kan. 622, 132 Pac. 164; *United Shoe Machinery Corporation et al.* v. *United States,* 258 U. S. 451, 66 L. Ed. 708, 42 Sup. Ct. Rep. 363; *Fairchild* v. *Lynch,* 99 N. Y. 359, 2 N. E. 20; *Fischer* v. *Hammons,* 32 Ariz. 423, 259 Pac. 676. This is entirely in accord with the rule announced by this court in the case last cited. The following excerpt frrm 34 C. J. 909 was there quoted approvingly:

"The rule is often stated in general terms that a judgment is conclusive not only upon the questions actually contested and determined, but upon all matters which might have been litigated and decided in that suit; and this is undoubtedly true of all matters properly belonging to the subject of the controversy and within the scope of the issues, so that each party must make the most of his case or defense, bringing forward all his facts, grounds, reasons, or evidence in support of it, on pain of being barred from showing such omitted matter in a subsequent suit."

But, if this were not true, there is no question but that the defects complained of are such that they could in no sense affect the validity of Ordinance 928 or the bonds authorized thereunder. In the issuance of bonds, the City of Phoenix is governed by the provisions of the statute applicable to counties, school

districts, and towns which are found in chapter 2, title 52, Revised Statutes of Arizona Civ. Code, 1913. Paragraph 5267 of that chapter provides that an election for this purpose shall be called by the city authorities, and paragraph 5273 states in the following language what such a call shall contain:

"In the call for said election hereinbefore in the second section (par. 5267) of this chapter, required to be made, there shall be set forth the aggregate amount of said bonds, the term thereof, the rate of interest to be paid thereon, when such interest shall be paid, the date of maturity of said bonds or other evidences of indebtedness, and the purposes for which the money derived from the sale of such bonds or other evidences of indebtedness shall be expended."

It will be observed that this language requires that the call shall set forth, among other things, the following: First, the aggregate amount of the bonds; second, the terms thereof; third, the rate of interest; and, fourth, the date of maturity. It is the contention of appellant that neither Ordinance 928 nor the call for the election contained therein, which included the proposition to be submitted to the voters, complies with the statute in these particulars. This is true, it is said, because, notwithstanding the fact that they both state in the first instance that the amount of bonds it is proposed to be issued is $750,000 and that they shall consist of 750 bonds in the denomination of $1,000 each, it later provides in the language, "said bonds shall mature and become due and payable serially thirty thousand ($30,000.00) dollars on the first day of January of each of the years 1932 to 1957, inclusive," that the aggregate amount is $780,000, since it is 26 years from January 1st, 1932, to January 1st, 1957, inclusive, and $30,000 the annual payment, multiplied by 26, aggregates this sum. It is likewise claimed that the language, "shall . . . bear interest . . . at the rate of not to exceed five per centum (5%)

per annum," does not state with sufficient certainty
the rate of interest the bonds shall carry.

It is difficult to understand just how there could
exist any real doubt as to the amount of bonds it
was proposed by the foregoing language to issue. It
is clear that the total is $750,000, and that the num-
ber of bonds is 750, each in the denomination of
$1,000. The mere fact that the first series of 30,
totaling $30,000, will mature and become payable on
January 1st, 1932, and that a like series will mature
and become payable on the 1st day of each January
thereafter up to and including January 1, 1957, and
that this covers a period of 26 years, does not mean
that the total amount of the issue is $780,000 instead
of $750,000, and that the number of bonds is 780 and
not 750. Both Ordinance 928 and the proposition
submitted to the voters ask specifically and definitely,
"Shall the commission of the city of Phoenix . . .
be authorized to create an indebtedness in and on be-
half of said city of Phoenix . . . by issuing nego-
tiable serial coupon bonds of the city of Phoenix in
the amount of seven hundred fifty thousand ($750,-
000.00) dollars?" and it was this question that was
answered by the voters. The fact that in the same
ordinance and proposition there was a later state-
ment dealing merely with the time when the different
series of the 750 bonds become due does not render
either the question or the answer doubtful. It is
plain that the date, January 1st, 1957, was inserted by
mistake for January 1st, 1956, and that the voters had
in mind the issuance of bonds in the sum of $750,000
and not $780,000. The error, in view of the full sit-
uation, was a mere irregularity, and, even though the
voters may have had the impression that the last
series of $30,000 would mature in January, 1957, it
is inconceivable that such a thought could have had
any more weight with them in casting their ballots
than the insertion of the correct date, 1956, would

have had. They were not misled, but thoroughly understood the question submitted to them, and, when this is true, the statute, though mandatory in terms, is satisfied. *Cowan, City Recorder*, v. *City of Tucson*, 24 Ariz. 330, 209 Pac. 296. Abbott on Public Securities uses this language in paragraph 128:

"The statutes of a state generally prescribe the form of the notice or order calling for an election. These provisions are considered mandatory, at least so far as the essentials of the notice are concerned, but not the precise wording or phraseology. The test of the sufficiency or validity of a notice is not whether the words and punctuation as prescribed by the statutes were used, unless so required, but whether the voters at the election held pursuant to such notice understood the questions submitted to them. If these are clearly expressed in unmistakable language in the notice, it will be held sufficient, and therefore all subsequent proceedings had thereunder valid."

The other matter upon which appellant relies to invalidate the bonds is that both the ordinance and proposition submitted to the voters fail to state with the degree of certainty the statute requires the rate of interest the bonds shall bear. Their language is "at the rate of not to exceed five per centum (5%) per annum," and this, it is argued, is merely the maximum rate at which they may be issued and not a statement of the exact rate of interest. Appellant relies chiefly on *Hillsborough County* v. *Henderson*, 45 Fla. 356, 33 South. 997, to support this proposition and a reading of that case discloses that it holds as he contends, but it was based upon a statute (Rev. Stats. 1892, §§ 591–593, as amended by Acts 1899, chap. 4711) that differs from ours in that it specifically requires the county commissioners to "determine the rate of interest to be paid on the bonds." If, however, it were directly in point, we are of the opinion that the better reasoning and certainly the

weight of authority favor the view that an ordinance directing the issuance of bonds and a notice of election submitting the proposition to the electors specifying that the bonds to be issued "shall bear interest at the rate of not to exceed five per centum (5%) per annum" sufficiently specify the rate of interest so that bonds issued pursuant thereto and bearing four and one-half per cent interest are valid. *Omaha National Bank* v. *City of Omaha,* 15 Neb. 333, 18 N. W. 63; *Town of Lumberton* v. *John Nuveen & Co.,* 144 N. C. 303, 56 S. E. 940; *Schooley* v. *City of Chehalis,* 84 Wash. 667, 147 Pac. 410; *City of Cheyenne* v. *State,* 17 Wyo. 90, 96 Pac. 244. In the last case is found a full discussion of the proposition and we think a correct determination of it. The following is an excerpt from it:

"We think it entirely clear that the object of the statute in requiring the proposition submitted to specify the rate of interest and the other matters required to be specified was to enable the voters to fairly and intelligently understand the character and extent of the liability proposed to be imposed upon the city as well as the purpose to which the money raised by the bonds is to be devoted, and we are unable to understand how any voter could be misled by reason of the rate of interest being specified as not to exceed 5 per cent per annum. It is impossible to conceive that a voter who voted for the bonds under the proposition as submitted, at least from the view of a taxpayer or citizen, would have voted against them had the proposition been more precise and definite as to the rate by stating it at 5 per cent per annum, leaving no discretion in the city authorities with reference to the rate."

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.