599 P.2d 175

**EL PASO NATURAL GAS COMPANY, a Delaware Corporation, Appellant,**

v.

**STATE of Arizona, Bart Fleming, State Treasurer of Arizona, State Tax Commission of Arizona and Waldo Dewitt and Robert Kennedy, Members of and Constituting the State Tax Commission of Arizona, Department of Revenue of Arizona, Richard B. Howland, Director of Department of Revenue of Arizona, Apache County, Lavere O. Connolly, Treasurer of Apache County, Cochise County, Louise E. Peters, Treasurer of Cochise County, Coconino County, Rose Stacy, Treasurer of Coconino County, Gila County, William V. Cunningham, Treasurer of Gila County, Graham County, Evelyn Hughes, Treasurer of Graham County, Greenlee County, Kittie Potter, Treasurer of Greenlee County, Maricopa County, Glenn O. Stapley, Treasurer of Maricopa County, Mohave County, Grace Marlow, Treasurer of Mohave County, Navajo County, Raymond H. Randall, Treasurer of Navajo County, Pima County, James Lee Kirk, Treasurer of Pima County, Pinal County, Jim L. Turnbull, Treasurer of Pinal County, Santa Cruz County, Oscar H. Islas, Treasurer of Santa Cruz County, Yavapai County, Paul J. Wedepohl, Treasurer of Yavapai County, Yuma County, and Billy F. Walker, Treasurer of Yuma County, Appellees.**

No. 13932.

Supreme Court of Arizona,
En Banc.

June 19, 1979.

Rehearing Denied Sept. 6, 1979.

**220**

Bilby, Shoenhair, Warnock & Dolph by Harold C. Warnock and Stephen A. Thomas, Tucson, for appellant.

Bruce E. Babbitt, former Atty. Gen., Robert K. Corbin, Atty. Gen. by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellees.

Beer & Kalyna by Donald P. Roelke, Phoenix, for appellee Stapley.

HAYS, Justice.

At issue in this case is the legality of two appropriations passed by the legislature and the consequent effect on the state property tax rate. We have jurisdiction pursuant to 17A A.R.S. Rules of the Supreme Court, rule 47(e)(5).

Plaintiff-appellant, El Paso Natural Gas Company, Inc. (El Paso), brought suit pursuant to A.R.S. § 42–204 to recover $990,-659.23 of taxes, half of which were paid under protest. Defendant-appellees are the state of Arizona, the state treasurer, the state tax commission, individual members of that commission, the department of revenue, the director of the department of revenue, all 14 counties and their respective treasurers. El Paso alleges that taxes were illegally levied for the Capital Outlay Stabilization Fund and Operating Reserve appropriations passed by the legislature for the fiscal year 1970–71.

In 1970 the Second Regular Session of the Twenty-ninth Legislature enacted a general appropriation bill which made appropriations for the various departments of the state for the fiscal year July 1, 1970, through June 30, 1971. 1970 Ariz.Sess. Laws, ch. 162. Subdivision 104 of that bill appropriated twelve million dollars to a "Capital Outlay Stabilization Fund" and Subdivision 105 appropriated twenty million dollars to an "Operating Reserve." *Id.* These two appropriations were included in determining the amount to be raised by taxes on real and personal property in order to meet the budget requirements of the state for the fiscal year ending June 30, 1971. The resulting tax rate was fixed at $1.65 per $100 of assessed valuation for the year 1970. El Paso alleges that had the defendant state tax commission * not computed the tax rate and levied taxes so as to raise, in addition to all other items in the general appropriation bill, the illegal sum of $32,000,000, the tax rate levied against real and personal property would have been $.54 per $100 of assessed valuation.

This appeal presents a number of complex and difficult issues which for clarity and organizational purposes we summarize as follows:

1. Does the decision of the Court of Appeals in *State v. Arizona Public Service Co.* foreclose El Paso's claim for relief?

2. Does res judicata apply to taxpayer lawsuits?

3. Do the appropriations violate Article 4, Part 2, § 20 of the Arizona Constitution?

4. Do the appropriations violate Article 9, § 3, ¶ 1 of the Arizona Constitution and A.R.S. § 42–108.01(B)?

---

* The functions of setting the state property tax rate and levying the tax are now performed by the joint legislative tax committee and the department of revenue, respectively. A.R.S. § 42–108; A.R.S. § 42–108.01.

5. Do the appropriations violate Article 9, § 3, ¶ 2, and § 9 of the Arizona Constitution?

6. Do the appropriations violate the separation of powers doctrine as enunciated in Article 3 of the Arizona Constitution?

7. Do the appropriations accord with the Financial Code?

8. Has El Paso satisfied a condition precedent to bringing suit by paying its taxes under protest?

## APS DECISION

Defendants contend that the decision of the Court of Appeals in *State v. Arizona Public Service Co.*, 24 Ariz.App. 601, 540 P.2d 727 (1975), *appeal dismissed*, 426 U.S. 931, 96 S.Ct. 2643, 49 L.Ed.2d 383 (1976), forecloses El Paso's claim for relief. Arizona Public Service Company (APS) brought suit in Maricopa County against the same defendants as in the present case, challenging the same appropriations and seeking recovery of its taxes attributable to the challenged appropriations. The defendants moved for judgment on the pleadings on the ground that APS had failed to allege that the resulting tax rate was so excessive as to be arbitrary or fraudulent. After this motion was denied by the trial court, both parties made cross-motions for summary judgment. The trial court granted APS's motion and held that the appropriations for the Capital Outlay Stabilization Fund and Operating Reserve were unconstitutional, that their inclusion in the general appropriation bill resulted in an increase in the state tax rate of $1.11 per $100 assessed valuation, and therefore, that APS was entitled to recover the portion of its taxes attributable to the illegal increase. On appeal by the state, judgment was reversed. Based on our opinion in *Cochise County v. Southern Pacific Co.*, 99 Ariz. 385, 409 P.2d 549 (1966), the Court of Appeals held that "APS having failed to allege and prove that the alleged unconstitutional appropriation resulted in an excessive tax rate so as to be fraudulent or arbitrary, its complaint should have been dismissed." 24 Ariz.App. at 605, 540 P.2d at 731.

In *Cochise* the State Board of Equalization, which in 1959–60 set the property tax rate, unknowingly used incorrect figures furnished it by the State Superintendent of Public Instruction. The Superintendent had certified to the Board a computation based on average daily high school enrollment rather than average daily attendance as prescribed by A.R.S. § 15–1211. The resulting tax rate was $1.70 instead of $1.661. We held that the Board of Equalization in relying on the Superintendent's certification had not acted arbitrarily or fraudulently, nor was the resulting rate grossly excessive. 99 Ariz. at 393–94, 409 P.2d at 555.

Our decision in *Cochise* was based on the assumption that the Board, in carrying out its tax-setting power, had acted judicially. *See* 99 Ariz. at 391, 409 P.2d at 553. Judicial acts, however, are ones of discretion or judgment, whereas ministerial acts leave nothing to discretion for the duty and manner of performance are described with certainty. *Magma Copper Co. v. Arizona State Tax Commission*, 67 Ariz. 77, 85–86, 191 P.2d 169, 175 (1948); *Bryant v. Bryant*, 40 Ariz. 519, 521, 14 P.2d 712, 713 (1932). The Board of Equalization had no discretion as to which figures it could use; the statute was explicit. Hence, the Board acted ministerially, not judicially.

Arbitrariness provides a proper yardstick for judging the actions of an administrative agency when they involve an exercise of discretion, *Schade v. Arizona State Retirement System*, 109 Ariz. 396, 510 P.2d 42 (1973), but it has no application to cases dealing with ministerial duties or constitutional challenges. *See Maricopa County v. Southern Pacific Co.*, 63 Ariz. 342, 346–47, 162 P.2d 619, 622 (1945). We therefore indicate that we prospectively overrule our holding in *Cochise* that a tax levy will not be set aside unless the tax rate is so excessive as to be arbitrary or fraudulent.

## RES JUDICATA

At first blush, the defendants' reliance on the res judicata effects of the

APS decision seems misplaced. The general rule in sustaining a plea of res judicata requires identity of the parties, the capacity in which they appear, the subject matter, and the cause of action. *Snow v. Kennedy*, 36 Ariz. 475, 488, 286 P. 930, 934 (1930). Only the first requirement presents any difficulty, for El Paso was not a party to the APS decision. Nevertheless, the defendants invoke the equitable doctrine of virtual representation to conclude that the APS decision is binding on El Paso as res judicata. Under that theory, commonly encountered in class actions, a judgment in favor of or against a party representing a general class operates as res judicata in favor of or against all who are thus represented. This general principle has been applied to litigation instituted by a taxpayer to determine a public right or matter of public interest so that any judgment rendered therein would bind all other taxpayers. *E. g., Williams v. Board of Supervisors of DeSoto County*, 139 Miss. 78, 103 So. 812 (1925); *Seibert v. City of Columbia*, 461 S.W.2d 808 (Mo.1971); *Anderson v. Jeannotte*, 96 N.W.2d 591 (N.D.1959); *Gist v. Stamford Hospital District*, 557 S.W.2d 556 (Tex.Civ.App.1977). "Of necessity, absent fraud or bad faith, all residents and taxpayers must be bound by the result of litigation of a public nature carried on by one in similar circumstances and having a common interest." *Seibert, supra*, at 811.

Although not denominated as such, this doctrine has been utilized in Arizona. In *Luhrs v. City of Phoenix*, 33 Ariz. 156, 262 P. 1002 (1928), a judgment in a taxpayer's suit was held conclusive as res judicata against another taxpayer in a subsequent suit when the matter could have been raised in the first suit. In another case, brought to recover taxes unlawfully assessed and collected, plaintiffs, who were not parties to a prior suit, were allowed to rely on the previous judgment to prevent the defendant from relitigating an issue that had been decided against it in the prior suit. *Martin v. Whiting*, 65 Ariz. 391, 181 P.2d 819 (1947). The *Whiting* court noted that "[p]laintiffs in the instant suits are not the same persons who were plaintiffs in the

*Ross* case, supra, but in contemplation of law they are the same since all plaintiffs in these suits sued in their capacity as taxpayers." *Id.* at 394, 181 P.2d at 821. Since our decisions accord with the weight of authority, we conclude that when a taxpayer or property owner brings an action against the state or other governmental subdivision, in the absence of fraud or collusion, a judgment for or against the state or political subdivision, upon a matter of public and general interest, is binding and conclusive upon all other taxpayers and property owners similarly situated.

As the doctrine of virtual representation stands in derogation of the general rule that a judgment binds only parties before the court, application of the bar of res judicata in these circumstances demands the utmost caution. The judgment in the prior case must have been a final judgment rendered on the merits by a court of competent jurisdiction. *Hoff v. City of Mesa*, 86 Ariz. 259, 344 P.2d 1013 (1959). There being no question of jurisdiction, we focus on the merits and the finality of the judgment. The Court of Appeals directed that judgment be entered for the defendants because APS failed to allege and prove an essential element of its complaint, an element that we have now declared to be nonessential. Nevertheless, the APS decision may be validly used for res judicata purposes as summary judgments are final judgments on the merits. *Union Interchange, Inc. v. Van Aalsburg*, 102 Ariz. 461, 432 P.2d 589 (1967). Moreover, a judgment, although later determined by an appellate court to be erroneous, is nonetheless conclusive. *Stuart v. Winslow Elementary School District No. 1*, 100 Ariz. 375, 388, 414 P.2d 976, 985 (1966); *DeMaio v. Lumbermens Mutual Casualty Co.*, 247 Md. 30, 34, 230 A.2d 279, 281 (1967); Restatement, Judgments § 48, comment a (1942). The decision of the Court of Appeals in *State v. Arizona Public Service Co.*, supra, therefore, is determinative of El Paso's claim, and ordinarily, as res judicata, would preclude recovery.

Res judicata is a judicial doctrine grounded in public policy considerations to insure that at some point there will be an end to litigation. *Lee v. Johnson,* 70 Ariz. 122, 127, 216 P.2d 722, 725 (1950). We consider its application appropriate to the facts and law of this case. The judgment of the trial court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.