60 P.3d 224

Elyse WEBBER, fka Elyse Fann,
Plaintiff, Counterdefendant–
Appellee,

v.

GRINDLE AUDIO PRODUCTIONS, INC.,
a dissolved Arizona corporation; Self–
Talk Systems, Inc., a dissolved Arizona
corporation, aka N.A.C.I. Productions,
Inc.; Reanne Brown aka Anne Brown
and John Doe Brown, wife and husband,
Defendants, Counterplaintiffs–Appel-
lants.

No. 1 CA–CV 02–0008.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 21, 2002.

Review Denied April 22, 2003.

Schian Walker, P.L.C. By Michael R. Walker and Mark C. Hudson, Phoenix, Attorneys for Plaintiff, Counterdefendant–Appellee.

Keith M. Knowlton, L.L.C. By Keith M. Knowlton, Mesa, Attorneys for Defendants, Counterplaintiffs–Appellants.

## OPINION

EHRLICH, Judge.

¶ 1 The appellants complain of a summary judgment in favor of Elyse Webber, awarding her statutory damages, attorneys' fees and costs. For the following reasons, we affirm.

## FACTS AND RELEVANT PROCEEDINGS

¶ 2 In 1993, Webber filed a voluntary petition in the United States Bankruptcy Court for the District of Arizona pursuant to Chapter 7 of the United States Bankruptcy Code, Case Number 93–01573–PHX–SSC. Her case was processed as a "no-asset" case because Webber had no assets to distribute to creditors. A date was not set for submitting creditor claims because a "no asset" case does not require filing proofs of claim. *See* FED. R. BANKR.P. 2002(e). Indeed, cases such as Webber's are known as "no asset, no bar date" cases. *In re Beezley*, 994 F.2d 1433, 1434 (9th Cir.1993)(per curiam).

¶ 3 Grindle Audio Production, Inc., and Self–Talk Systems, Inc. (the "corporations") were two Arizona businesses of which ReAnne Brown was the sole owner, shareholder and statutory agent.[1] Months after Webber's bankruptcy, the corporations sued Webber and others in Maricopa County Superior Court in connection with transactions and events that occurred prior to 1993. Eventually they obtained a judgment by default against Webber.

¶ 4 Webber had not listed the corporations as creditors in her bankruptcy proceeding, allegedly because she did not know of their claims. She received her discharge in bankruptcy less than one month before the corporations filed their court action.

¶ 5 The corporations recorded their judgment in the Office of the Maricopa County Recorder, thereby imposing judgment liens upon any real property titled in Webber's name. ARIZ.REV.STAT. ("A.R.S.") § 33–961 (2000). In October 1994, the corporations received actual notice that Webber had received a discharge in bankruptcy.[2]

¶ 6 Several years later, Webber unsuccessfully demanded that the judgment liens be released as void. Instead, Brown secured a renewal of the judgment in favor of the corporations by having the appropriate affidavits filed in the Office of the Maricopa County Recorder. A.R.S. §§ 12–1612 (1994), 12–1613 (1994).

¶ 7 Webber then filed this action pursuant to A.R.S. § 33–420(A)(2000),[3] asserting that the judgment liens were groundless and seeking an order declaring them to be void because of her discharge in bankruptcy. She also sought statutory damages, attorneys' fees and costs.

¶ 8 Webber obtained a default judgment against the appellants, which the appellants successfully moved to have set aside. Thereafter, they filed their answer and presented a counterclaim to recover Webber's share of proceeds from the sale of real property subject to the judgment liens.[4] Simultaneously, they moved to dismiss the complaint or, alternatively, for summary judgment on the pleadings. They contended that Webber's bankruptcy discharge did not affect the judgment because the judgment was based on allegations of fraud, the claims had not been listed in Webber's bankruptcy and the appellants did not have notice of the filing before the discharge was granted.

¶ 9 Webber responded that the claims represented by the judgment had been discharged, that the judgment was void because it was entered in violation of the post-discharge injunction provided by federal bankruptcy law and that the renewal of the judgment was likewise void. She also presented a cross-motion for summary judgment upon the last basis.

¶ 10 The trial court denied the appellants' motion and granted Webber's cross-motion. It ruled that, because the judgment arose

---

1. "John Doe" Brown is not otherwise identified. He participated in this case solely as the husband of ReAnne Brown.

2. The corporations were dissolved in 1996.

3. Section 33–420(A), A.R.S., provides in pertinent part that one who causes a lien to be recorded "knowing or having reason to know that the document is ... groundless ... or is

otherwise invalid" is liable for damages and attorney fees.

4. Webber owned an interest in certain real estate that she wanted to sell but that was encumbered by the judgment liens. The parties reached an agreement whereby the sale could proceed with Webber's portion of the proceeds to be held in escrow pending the outcome of the litigation to determine the validity of the liens.

from pre-petition conduct, the claims that the judgment represented had been discharged regardless whether the appellants had received actual notice of the bankruptcy proceedings. The court concluded that the appellants were required to prove that the debt had not been discharged by bringing an appropriate action in the bankruptcy court and that, until such a determination had been made, the debt was presumptively discharged and the default judgment and resulting judgment liens were void.

¶11 As part of its ruling, the trial court ordered the appellants to respond to Webber's request for relief pursuant to A.R.S. § 33–420(A). When no response was forthcoming after several months, Webber moved for entry of final judgment and applied for an award of attorneys' fees and costs. Still the appellants failed to respond to the motion or to object to the application for award of fees, and final judgment in Webber's favor was entered declaring the judgment liens to be invalid and awarding Webber statutory damages pursuant to § 33–420(A) plus attorneys' fees and costs against the appellants jointly and severally. This appeal followed.

### DISCUSSION

¶12 The parties do not dispute the material facts. The appellants raise two legal issues: whether the trial court erred in ruling that the default judgment was void and whether the court erred in entering judgment against Brown individually. We review these questions de novo. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App.1994).

A. *Whether Webber's Bankruptcy Discharge Rendered the Judgment and Judgment Renewal Void*

¶13 The appellants contend that the default judgment was not discharged because the judgment was based upon allegations of fraud and racketeering, the corporations

were not listed as creditors in Webber's bankruptcy schedules and the appellants did not have notice of Webber's bankruptcy until after discharge. Webber responds that the bankruptcy discharge rendered the default judgment and judgment liens void. Her analysis is the more correct one.

¶14 A bankruptcy discharge in a Chapter 7, "no asset, no bar date" case relieves the debtor from all pre-petition debts whether or not listed in the bankrupt's filings, *Beezley*, 994 F.2d at 1435–36 (O'Scannlain, J., concurring),[5] with certain exceptions. Those exceptions in subsections (2), (4) and (6) of 11 U.S.C. § 523(a) (2001) may be "loosely" described as arising from intentional wrongdoing. *Id.* at 1435. The appellants contend that the judgment in this case arose from that type of wrongdoing described in subsections (4) and (6) and was therefore excepted from discharge.

¶15 The appellants overlook, however, that those exceptions to discharge are not self-executing; non-dischargeable claims must first be proven. *See In re Franklin*, 179 B.R. 913, 924 (Bankr.E.D.Cal.1995)(creditor's action for non-dischargeability pursuant to 11 U.S.C. § 523(a)(2), (4) or (6) in a pending bankruptcy becomes a cause of action pursuant to § 523(a)(3)(B) after discharge if the creditor was unlisted and without notice). Webber's discharge order makes this clear by stating that any debts alleged to be excepted pursuant to subsections (2), (4) and (6) of § 523(a) are discharged "unless heretofore or hereafter determined" by court order to be non-dischargeable.

¶16 A creditor with notice claiming an exception to discharge for intentional wrongdoing is subject to a time limit for bringing an action in the bankruptcy proceeding to determine dischargeability. *In re Santiago*, 175 B.R. 48, 49–50 (B.A.P. 9th Cir.1994). A failure to act during the prescribed time results in discharge of the debt,

---

5. The *Beezley* case established that reopening a Chapter 7, "no asset, no bar date" case to add an unlisted creditor was futile. 994 F.2d at 1437. All dischargeable debts are discharged whether listed or not. *Id.* at 1435. Non-dischargeable debts are not affected, however; the creditor claiming non-dischargeability based upon intentional wrongdoing retains the ability to litigate that issue without the time constraints in the bankruptcy rules for scheduled creditors with such claims. *Id.* at 1435–36.

regardless of its merit as a non-dischargeable claim. *Id.*

█ ¶ 17 The appellants avow that they were unable to meet the time limit of the bankruptcy proceedings because of the lack of notice to them as a result of not having been listed as creditors in Webber's bankruptcy filing.[6] They misunderstand the effect of their lack of notice because, contrary to their contention, the lack of notice until after discharge did not make it "too late" for them to file an adversary complaint to determine if the claims were non-dischargeable. An unlisted creditor without notice who fails to bring an action to establish non-dischargeability within the time prescribed by the bankruptcy rules does not lose the right to such an adjudication; such an action may be filed at any time. *Id.* at 51. A failure of notice to a creditor with a claim of non-dischargeability merely deprives the *debtor* of the defense of failure to comply with the time limit in the bankruptcy rules. *Id.; In re Wilborn,* 205 B.R. 202, 208 (B.A.P. 9th Cir.1996)("When a debtor fails to schedule a creditor and the limitations period expires, [the debtor] waives or is equitably estopped from asserting the passing ... deadline as a defense...."); *Franklin,* 179 B.R. at 924 (debtor may lose right to exclusive federal jurisdiction over any subsequent dischargeability litigation).

¶ 18 Furthermore, Webber's failure to list the corporations as creditors did not automatically make their unscheduled claims non-dischargeable; creditors must prove their causes of action pursuant to §§ 523(a)(2), (4) or (6) to prevail under § 523(a)(3). *See In re Lochrie,* 78 B.R. 257, 259–60 (B.A.P. 9th Cir. 1987).

█ ¶ 19 In summary, whether the creditor is scheduled or not, the question of non-dischargeability for intentional wrongdoing pursuant to subsections (2), (4) and (6) requires adjudication. A listed creditor with notice must act to prove the claim before the date set by the bankruptcy rules; an unlisted creditor without notice is not relieved from the duty to prove the claim but from the duty to act before the expiration of the bankruptcy court deadline.

█ ¶ 20 The appellants, although not notified of Webber's bankruptcy filing at the time, admittedly received actual notice in 1994 of her discharge in bankruptcy. Despite this notice, they took no action to establish the non-dischargeability of their debt. The absence of an adjudication of non-dischargeability renders the debts represented by the default judgment presumptively discharged. Therefore, the trial court correctly ruled that the judgment and the renewal were void.[7]

█ ¶ 21 The appellants contend that, because the default judgment was based upon allegations of fraud and racketeering, it is entitled to res judicata or collateral estoppel effect establishing non-dischargeability.[8] We disagree. They did not seek the affirma-

---

6. Webber moved to reopen her bankruptcy proceeding to add the corporations as creditors, but the motion was denied, accompanied by an explanation from the court that reopening was unnecessary and unavailing after *Beezley.*

7. The appellants argue that the trial court erred by stating that they were required to present their *claim* of non-dischargeability in the bankruptcy court, and they cite authority that state courts have concurrent jurisdiction over such claims after the bankruptcy case is closed. We do not need to decide this issue; the proper forum for such an action is irrelevant to the result here. The appellants have never attempted to litigate dischargeability in any court.

8. Collateral estoppel or issue preclusion would be the applicable doctrine, not res judicata. Res judicata only applies in a subsequent proceeding if the parties, subject matter and cause of action

are identical. *El Paso Natural Gas Co. v. State,* 123 Ariz. 219, 222, 599 P.2d 175, 178 (1979). As the subject matter, cause of action and elements of a non-dischargeability claim are governed by federal law, they are different from those presented in the state-court litigation. *Grogan v. Garner,* 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The appellants rely on the exceptions to discharge in 11 U.S.C. § 523(a)(4) and (6). These subsections, respectively, except debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" and debts arising from "willful and malicious injury" to person or property. The federal courts have developed a body of case law interpreting these exceptions. *See, e.g., Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (establishing requisite scienter for § 523(a)(6) claim).

tive relief of an adjudication of non-dischargeability from the trial court. Although they sought affirmative relief by counterclaim to recover the alleged proceeds of their judgment liens, they did not ask the court to adjudicate whether their claims against Webber were in fact non-dischargeable.

¶ 22 Equally important, the default judgment against Webber would not be preclusive in an action to determine dischargeability in any event. The preclusive effect of a state-court judgment for the purpose of determining non-dischargeability in bankruptcy is determined by the law of the state where the judgment was entered. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). Arizona law provides that collateral estoppel or issue preclusion is only applicable when the issue or fact in question was actually litigated in the previous suit. *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). In the case of a default judgment, the issues were not actually litigated. *Id.; State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235, 237–38, 908 P.2d 49, 51–52 (App.1995)(no collateral estoppel when issue of child's paternity not actually litigated in default marriage dissolution proceeding). Because the judgment against Webber was procured by default, she is not precluded from contesting whether the judgment arose from a non-dischargeable debt, and the judgment against her would not be entitled to collateral estoppel in any proceeding brought to adjudicate dischargeability.[9]

¶ 23 The appellants rely upon *In re Haga*, 131 B.R. 320 (Bankr.W.D.Tex.1991), for the proposition that they need not litigate the merits of their non-dischargeability claims but merely make a showing of a "viable or colorable" claim to establish their exceptions to discharge. The *Haga* case is inapposite for two reasons. First, that decision was rendered in the context of an action to determine non-dischargeability, and its holding is relevant only to the burden of proof in such a proceeding. *Id.* at 323. This is not such an action, and the appellants have not instituted

such an action. Second, the *Haga* standard of proof in a dischargeability proceeding is not the standard for the bankruptcy courts of the Ninth Circuit. *See Lochrie*, 78 B.R. at 259–60.

¶ 24 There is a division among bankruptcy courts as to the burden of proof to establish non-dischargeability. *Eldridge v. Waugh*, 198 B.R. 545, 548 (E.D.Ark.1995). Some courts require only a showing by the creditor that notice of the bankruptcy proceeding was not provided; other courts require only that the creditor show a "viable or colorable claim" of intentional wrongdoing but do not require proof on the merits. *Id.* The opinion in *Haga* is an example of the latter standard. 131 B.R. at 327. The view in the bankruptcy courts of the Ninth Circuit in which Webber's bankruptcy proceeding was conducted is different; that is, as a matter of judicial economy, a creditor claiming non-dischargeability must prove the merits of the claim. *Lochrie*, 78 B.R. at 259–60.

¶ 25 The appellants' reliance upon *In re Maroney*, 195 B.R. 452 (Bankr.D.Ariz.1996), is likewise misplaced. Contrary to the appellants' assertion, the court did not hold that post-petition judgments are "valid as a matter of law" and entitled to "collateral estoppel preclusion." Rather, the court held that the state court had erroneously determined that a judgment debt was not discharged because it had not been scheduled in the debtor's Chapter 7 proceeding. *Maroney*, 195 B.R. at 454. The debt was dischargeable according to bankruptcy law and had therefore been discharged. *Id.* at 454–55. Accordingly, the state-court's judgment was not entitled to collateral estoppel effect because a judgment based upon a discharged debt is void, including the portion of the judgment declaring the debt non-dischargeable. *Id.* at 455.

**B. Whether the Trial Court Erred By Imposing Personal Liability upon Brown**

¶ 26 Brown argues that the trial court made no findings to justify imposing

---

9. The complaint underlying the judgment names six individuals, four corporations and multiple fictitious defendants. It does not contain any specific allegations against Webber, who appears to have been named as the wife of another defendant as well as a shareholder of one corporate

defendant and an officer and director of another corporate defendant. The appellants make no attempt to show which issue determines dischargeability pursuant to the misconduct exceptions they cite.

personal liability upon her. Webber counters that this argument has been waived, and we agree because it is settled that an appeal is not the appropriate place to consider issues or theories not presented below. *Campbell v. Warren*, 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986); *Sahf v. Lake Havasu City Ass'n for the Retarded & Handicapped*, 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986).

¶ 27 When Webber moved for summary judgment, she sought judgment against all of the appellants, including Brown, upon Webber's claim of violating A.R.S. § 33–420(A). ·In their response, the appellants did not address the propriety of imposing liability upon Brown personally, and the trial court therefore had no opportunity to consider the issue.[10] After granting summary judgment, the court ·gave the appellants a chance to respond to Webber's § 33–420(A) claim, which they failed to do. Moreover, Brown joined with the corporations to seek a joint judgment against Webber for the proceeds from the sale of the real property that was subject to the judgment liens.

¶ 28 Even if the issue had not been waived, we would find no error. Brown admits that it was she, as sole owner and officer and agent of the dissolved corporations, who caused the renewals of the void judgment. She admits that this was done after she knew that Webber had received a discharge in bankruptcy and after Webber had notified her that the debts had been discharged.

¶ 29 Section 33–420(A), A.R.S., imposes liability upon any "person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting [a groundless or invalid] claim to be recorded." Brown's conduct is clearly within the plain meaning of the statutory proscription because she caused the

judgment to be renewed. *See Dearing v. Ariz. Dep't of Econ. Sec.*, 121 Ariz. 203, 204, 589 P.2d 446, 447 (App.1978)(court should follow the plain and natural meaning of statutory language). The statute contains no requirement that the person who causes the baseless document to be recorded also be named in that document as the appellants suggest. *See Wyatt v. Wehmueller*, 163 Ariz. 12, 785 P.2d 581 (App.1989)(affirming an award of attorneys' fees pursuant to § 33–420(A) against counsel who caused an invalid document to be recorded on behalf of his clients), *vacated in part on other grounds*, 167 Ariz. 281, 806 P.2d 870 (1991).[11]

### C. Attorneys' Fees on Appeal

¶ 30 Webber requests and is granted an award of appellate attorneys' fees and costs pursuant to A.R.S. § 33–420(A) upon her compliance with Arizona Rule of Civil Appellate Procedure 21(c).

### CONCLUSION

¶ 31 The judgment is affirmed.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and JON W. THOMPSON, Judge.

---

**10.** The appellants raised the issue of Brown's individual liability in their reply in support of their motion to set aside the default judgment as a basis for granting that motion. However, they failed to raise it again in response to Webber's successful motion for summary judgment. Moreover, they do not discuss Brown's liability for her actions according to A.R.S. § 33–420(A) but rather characterize the issue as an improper piercing of the corporate veil in their opening brief and simply state that Brown had a "good faith" basis for her actions in their reply brief.

**11.** Webber asks this Court to reverse the decision of the· trial court setting aside the default judgment in her favor as an alternative to affirming the summary judgment against the appellants. Our decision to affirm the summary judgment in her favor makes it unnecessary for us to consider this issue.