NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PENNY R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.R., G.R., *Appellees*.

No. 1 CA-JV 15-0166
FILED 12-17-2015

Appeal from the Superior Court in Maricopa County
No. JD29224
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Lawrence F. Winthrop joined.

_____

H O W E, Judge:

¶1            Penny R. ("Mother") appeals the juvenile court's determination that her two minor daughters, A.R. and G.R., were dependent children. For the following reasons, we affirm the juvenile court's order finding A.R. dependent due to neglect because Mother failed to provide A.R. with adequate care and supervision, but vacate the remainder of the order and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2            In September 2014, the Department of Child Safety ("Department") received three reports from A.R.'s school alleging that she may have been neglected or physically abused. Specifically, the reports alleged that A.R. had head lice, foul body odor, and tight clothing and that she lacked proper feminine hygiene napkins, causing her to bleed through her clothing. The reports also alleged that A.R., who is autistic and nonverbal, had unexplained bruises. In response, a Department investigator met with A.R. at her school, but because she is nonverbal A.R. could not tell the investigator how she got the bruises. Before leaving, the investigator confirmed that the school did not have any accident reports involving A.R. on file.

¶3            The investigator then went to A.R.'s home where Mother, Ruiz ("Father"), and G.R. were at the time. G.R., who had missed school that day, told the investigator that she felt sick and that her ear hurt. G.R. stated that she told her parents that she felt sick several days before, but that Mother had not taken her to the doctor because she "didn't know where the doctor was." The investigator noted that the home had a foul odor and that kitten feces, old food scraps, and dirty laundry lied scattered throughout. Mother remained in her bedroom during the investigator's visit and refused to come out even when the investigator asked to speak with her.

¶4            Three days later, on October 2, 2014, the Department took temporary custody of A.R. and G.R. and subsequently petitioned for dependency as to both parents. The Department contended that Mother (1) neglected her children because she failed to provide them with the basic necessities of life, (2) could not care for A.R. because she abused A.R. or failed to protect her from physical abuse, and (3) neglected the children due to her substance abuse. The Department did not take G.R. to a doctor after removing her from the home, and G.R.'s initial intake assessment noted that she was in good health and did not have any medical concerns. Approximately one month after petitioning for dependency, the Department assigned the case to a case manager. However, the case manager did not explain which services Mother should participate in until several weeks later. Still, the case manager did not actually refer Mother to one of those services—parent-aide visitations—until sometime over the next few months.

¶5            The juvenile court set a dependency hearing for March 2015, but the court could not proceed with the hearing as to Mother because her attorney did not appear.[1] The juvenile court again set and conducted a contested dependency hearing in May 2015 as to Mother, almost seven and a half months after the Department petitioned for dependency. The case manager admitted that although she had been assigned to the case six months earlier, she had not visited the home to inspect it or see if its condition had improved. She said that she had "no real reason" for not doing so. The case manager also stated that she had been out of the office for approximately three weeks in April and that the case sat idle while she was out. She further admitted that she did not initially refer Mother to any services or send Mother a service letter because Mother expressed reluctance to participate, so she "just didn't take the time to go ahead and [refer Mother], because I wasn't sure if she was going to engage or not." Regarding the parent-aide services that the case manager eventually referred Mother to, the case manager testified that Mother had not yet completed the six-month service because the six months had not yet passed. Finally, when Mother's attorney asked what safety concerns existed in returning the children specifically to Mother, the case manager responded "I can't answer any."

¶6            The investigator testified that Mother did not properly supervise A.R. because on two occasions the school reported to the

---

[1]            At this hearing, Father waived his right to contest the allegations of the dependency petition, and the juvenile court adjudicated the children dependent as to him.

Department that Mother had sent A.R. to school with soiled underwear and without proper feminine hygiene napkins. She said that she was concerned about these hygienic problems because A.R. is a child with special needs. The investigator also testified that Mother failed to take G.R. to the doctor when she had an ear infection, but admitted that G.R. was at school three days later when the investigator removed the children. The investigator further testified that she could not determine how A.R. received the bruises on her face. Regarding Mother's alleged drug abuse, the investigator admitted that she had "no real evidence" that Mother used drugs. She also admitted—like the case manager—that she did not return to the home after the children's removal to see if its condition had improved.

¶7            Mother testified that the current condition of her home was "still kind of cramped and a little disorganized, but it's clear." She also testified that since the investigator's visit she had given away the kittens and only kept three outdoor cats. Regarding A.R., Mother stated that she helped A.R. maintain appropriate hygiene and that although she knew that A.R. removed her feminine napkins at school, Mother could not control that. But Mother testified that A.R.'s placement home had A.R. wear diapers during her menstrual cycle, which Mother admitted was "probably a good idea" that she had not thought about. Regarding G.R., Mother stated that she knew where G.R.'s doctor was but did not take her because G.R. did not have a fever or any other symptoms. Mother said she kept G.R. home from school anyway because G.R. said she did not feel well.

¶8            During closing arguments, the Department argued for the first time that safety concerns existed relating to Mother's failure to protect A.R. and G.R. from Father's known substance abuse problem and history of domestic violence. In response, Mother argued that she did not pose any safety risks to the children. Mother also argued that the Department had not met its burden of proof and that alternatives to out-of-home dependency should have been explored, including in-home dependency and a safety monitor.

¶9            After the hearing, the juvenile court issued an order finding A.R. and G.R. dependent as to Mother. Specifically, the juvenile court found that the Department had proved by a preponderance of the evidence that Mother neglected the children by failing to provide the basic necessities of life by maintaining a filthy and unsafe home. The court also found that Mother neglected the children by failing to provide them with appropriate care and supervision by not maintaining A.R.'s hygiene and not taking G.R. to the doctor when she was ill. However, the juvenile court found that the Department failed to sufficiently prove the remaining allegations of

physical abuse and Mother's substance abuse. The juvenile court refused to address the issue of domestic violence because the Department did not make that allegation in its petition and made no findings regarding the safety concerns of Mother's failure to protect A.R. and G.R. from Father's drug use. The court found family reunification the appropriate case plan. Mother timely appealed.

**DISCUSSION**

¶10 Mother argues that insufficient evidence supports the juvenile court's dependency finding that Mother neglected her children by failing to provide A.R. and G.R. the basic necessities of life and adequate care and supervision. We review a dependency adjudication for an abuse of discretion and will only reverse the juvenile court's ruling when no reasonable evidence supports it. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 ¶ 21, 119 P.3d 1034, 1038 (App. 2005). We view the evidence in the light most favorable to sustaining the juvenile court's findings. *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267–68 ¶ 6, 330 P.3d 1023, 1024–25 (App. 2014). Here, sufficient evidence supports the juvenile court's dependency order finding A.R. dependent due to neglect based on Mother's failure to provide her with adequate care and supervision. However, insufficient evidence supports the finding that A.R. and G.R. were dependent due to neglect based on Mother's failure to provide them with the basic necessities of life. Insufficient evidence also supports the court's finding that G.R. was dependent due to neglect based on Mother's failure to provide her with adequate care and supervision.

¶11 The Department carries the burden to prove that a child is dependent. *In re Maricopa Cty. Juv. Action No. J-75482*, 111 Ariz. 588, 593, 536 P.2d 197, 202 (1975). To find "that a child is dependent," the juvenile court must find "by a preponderance of the evidence that the allegations contained in the dependency petition are true" based on one of the grounds set forth in A.R.S. § 8–201(14)(a). A.R.S. § 8–844(C)(1)(ii). Under this statute, a dependent child is one "[i]n need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care or control," "not provided with the necessities of life, including adequate food, clothing, shelter or medical care," or whose "home is unfit by reason of abuse, neglect, cruelty or depravity of a parent, a guardian or any other person having custody or care of that child." A.R.S. § 8–201(14)(a)(i), (ii), (iii). "Neglect" is defined as the "inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to

the child's health or welfare." A.R.S. § 8–201(24)(a). Because the definition of dependency is disjunctive, we will only reverse the juvenile court's dependency finding if none of the above elements was met. *See Willie G.*, 221 Ariz. at 232, 236 ¶ 2, ¶ 27, 119 P.3d at 1035, 1039 (addressing only one element of the definition of dependency to affirm the juvenile court's dependency finding).

**¶12** As Mother argues and the Department concedes, the Department failed to show that Mother's home remained unsanitary and unsafe at the time of the dependency adjudication. Neither the investigator nor the case manager returned to the home after removing A.R. and G.R. and petitioning for dependency to see whether it remained unfit for them. Additionally, the Department did not present any evidence from which the juvenile court could infer that, despite its failure to actually return to the home to inspect it, the home remained in the same condition that it was in seven months prior. To the contrary, Mother testified that the home was "still kind of cramped . . . but clear" at the time of the dependency adjudication. Thus, the record supports only a finding that Mother failed to provide the basic necessity of a safe home at the time of the dependency petition seven and a half months earlier, but not at the time of the dependency adjudication. *Cf. Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 331 ¶¶ 29–30, 152 P.3d 1209, 1214 (App. 2007) (stating that "the question is whether there were circumstances at the time of severance that prevented Mother from parenting the children . . ." and concluding that "missing one visit and being late for two others fourteen months prior to the severance trial hardly qualifies as an existing circumstance at the time of severance.").

**¶13** Likewise, the Department failed to show that Mother was unable or unwilling to provide medical care to G.R. at the time of the dependency adjudication. The record shows only that on one occasion, Mother kept her daughter home from school because she said she felt ill. The Department did not present any evidence showing that Mother's failure to take G.R. to the doctor caused an unreasonable risk of harm to her health or welfare. In fact, the Department itself did not see it necessary to take G.R. to a doctor upon her removal, and G.R.'s initial intake assessment stated that she was in good health and did not have any medical concerns. Thus, insufficient evidence supports the finding that A.R. and G.R. were dependent because of Mother's failure to provide the basic necessities of life and the finding that G.R. was dependent because of Mother's failure to provide her with adequate care and supervision under A.R.S. § 8–201(14)(a).

¶14        However, sufficient evidence does support the juvenile court's finding that A.R. was dependent as to Mother because Mother neglected A.R. by failing to provide her with adequate care and supervision. The investigator testified that the Department received multiple reports from A.R.'s school, two of which alleged that Mother sent A.R. to school with soiled underwear and without proper feminine hygiene napkins, causing her to bleed through her clothing. The recurrence of the issue shows Mother's inability or unwillingness to provide the necessary supervision that would have prevented the second report. The investigator also testified that she was concerned about A.R.'s hygiene issues because she is a child with special needs. Mother testified that she was aware of A.R.'s habit of removing her feminine napkins while at school, but stated that she could not prevent A.R.'s actions. By contrast, A.R.'s placement successfully addressed A.R.'s hygienic issue by placing her in diapers during her menstrual cycle. Thus, because the record shows that Mother failed to appropriately care and supervise A.R. after the first incident, including exploring alternative solutions, and that the issue caused concern regarding A.R., sufficient evidence supports the juvenile court's finding that A.R. was dependent due to Mother's neglect.

¶15        Despite failing to meet its burden of proof regarding G.R. and agreeing that "the court did not explicitly consider the state of the children at the time of the adjudication," the Department argues that this Court should nonetheless affirm the juvenile court's order because sufficient evidence exists to support it based on Mother's failure to protect her from Father's known drug use. In support of its argument, the Department correctly observes that this Court views the evidence in the light most favorable to sustaining the juvenile court's order and that we will not reverse the order unless no reasonable evidence supports it. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18, 219 P.3d 296, 303 (App. 2009); *Arizona Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7, 225 P.3d 604, 606 (App. 2010). The Department also cites authority for the proposition that we may affirm when "any reasonable view of the facts and law might support the judgment." *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985).

¶16        But while the evidence presented may have supported an adjudication of dependency based on Mother's failure to protect G.R. from Father's known substance abuse, the Department failed to allege that in its dependency petition and only brought it to the juvenile court's attention during its closing argument. The Department could have moved to amend its petition before either the March 2015 or May 2015 dependency hearings to conform to the evidence that Mother knew of Father's substance abuse. *See* Ariz. R.P. Juv. Ct. 55(D)(3). The Department also could have moved to

amend the petition at either hearing to conform to the evidence under Arizona Rule of Civil Procedure 15(b) to provide the juvenile court an opportunity to determine whether relief was appropriate under that rule. But the Department did neither, even though it questioned Mother about her knowledge of Father's drug abuse and knew it was going to make that argument to the juvenile court. Accordingly, the juvenile court made no findings on this alternative ground for dependency or of facts that would support it as a matter of law. *See Gilliland v. Rodriguez*, 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954) ("A court is called upon to make findings of only ultimate facts and is not required to bolster them by subsidiary findings . . . ."); *Webber v. Grindle Audio Prods., Inc.*, 204 Ariz. 84, 90 ¶ 26, 60 P.3d 224, 230 (App. 2002) ("[A]n appeal is not the appropriate place to consider issues or theories not presented below.").

¶17        We therefore reject the Department's argument that we may affirm the dependency order on grounds never fairly presented to or considered by the juvenile court. *See Burns v. Davis*, 196 Ariz. 155, 165 ¶ 40, 993 P.2d 1119, 1129 (App. 1999) (providing that the appellate court addresses arguments not ruled upon by trial court "only when the record is so fully developed that the facts and inferences are perfectly clear"); *Elliott v. Elliott*, 165 Ariz. 128, 135, 796 P.2d 930, 937 (App. 1990) (providing that where basis for ruling is unclear, "it is not enough that the appellate court is able to derive bases on which the trial court could have permissibly reached the decision it did from the record") (citation omitted). Thus, because insufficient evidence supports the juvenile court's finding that G.R. was dependent as to Mother, the juvenile court erred.

## CONCLUSION

¶18        For the foregoing reasons, we affirm the juvenile court's order finding A.R. dependent as to Mother, but vacate the remainder of the dependency order and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: ama